J-S04037-22

2022 PA Super 41

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| COLE HERRING | : | |
| | : | |
| Appellant | : | No. 329 EDA 2021 |

Appeal from the Judgment of Sentence Entered November 17, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001284-2018

BEFORE: BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.: **FILED MARCH 07, 2022**

Appellant Cole Herring appeals from the judgment of sentence entered by the Court of Common Pleas of Philadelphia County after the trial court convicted Appellant of first-degree murder, unlawful restraint, abuse of a corpse, and possession of an instrument of crime. Appellant claims the lower court erred in denying his motion pursuant to Pa.R.Crim.P. 600 and abused its discretion in refusing to admit evidence of his father's prior convictions in order to cast doubt on Appellant's guilt. After careful review, we affirm.

Appellant was charged with the aforementioned offenses in connection with the November 27, 2017 stabbing death of 15-year-old Sabriiyah McLean ("the victim"), whose body was ultimately discovered under a pile of leaves behind the apartment where 24-year-old Appellant lived with his family. The Philadelphia Police Department became involved in this case when Appellant's

_____

[*] Former Justice specially assigned to the Superior Court.

parents, Colon "Kenny" Swaringer and Cynthia Swaringer, came to the police station on the morning of November 28, 2017, to report Appellant had committed the murder of a young girl. N.T., 11/16/20, at 10-13, 143-44.

Swaringer told officers that, on the previous evening, after midnight, when he returned to his apartment after watching a televised football game with friends, Appellant confessed to Swaringer that he had killed a girl. *Id*. at 13, 144. Appellant showed Swaringer the victim's body, which was lying on the fire escape, just outside Appellant's bedroom. *Id*. at 13-14. Appellant told Swaringer not to tell anyone or "something else [would] happen to someone" in the house. *Id*. at 13-15. Swaringer indicated that his wife and other son were sleeping in the house. *Id*.

While Swaringer asserted that he did not sleep that night, he explained that he did not wake his wife and other son up as he was afraid they would become alarmed and that Appellant would hurt them. *Id*. at 17-19, 55-57, 59, 67. In the morning, Swaringer made up excuses to get his wife and other son out of the apartment. *Id*. Swaringer indicated that he went directly to the police station, gave the officers keys to enter the apartment, and told them to hurry to get there before Appellant left. *Id*. at 21, 27-29, 76, 145.

Philadelphia police officers proceeded to Appellant's apartment where they observed blood on the landing of the fire escape when viewing it from the outside of the apartment building. *Id*. at 13, 146. The officers then entered the dwelling with the assistance of the building supervisor. N.T. 10/22/20, at 26. When the officers entered the apartment, they observed

Appellant sitting on the couch, covered by a blanket. *Id*. In searching for evidence of a crime on the fire escape, which was accessible from Appellant's bedroom, the officers noted a strong odor, which they surmised was gasoline or lighter fluid. *Id*. at 26-27, 36. Officers discovered a pool of blood on the fire escape and blood on the walls of Appellant's bedroom. *Id*. at 27, 37-40; N.T. 11/16/20, at 186, 191-92.

Officers subsequently uncovered the victim's body under a pile of leaves near a dumpster behind Appellant's apartment building. N.T., 11/16/20, at 177. The officers also recovered a black leather jacket and a pair of women's underwear near the dumpster. *Id*. at 171-72.

When the officers arrested Appellant and transported him to the police station, they discovered Appellant had blood stains on his sweatpants and boxer shorts. *Id*. at 195-98. During a further search of the apartment, the officers recovered bloody scissors from a trash can as well as a black Puma hooded sweatshirt and a white T-shirt with blood stains in the laundry basket in a nearby bathroom. *Id*. at 182, 201-202.

After an autopsy, the medical examiner determined that the victim sustained seventy-seven stab wounds and had burns covering nearly 40% of her body. N.T., 11/17/20, at 130-132. The investigating officers also recovered surveillance video that captured footage of Appellant outside the apartment complex near the dumpster on the relevant date and time wearing a Puma sweatshirt. N.T., 11/16/20, at 95-98; N.T., 11/17/20, at 11-19.

On November 28, 2017, Philadelphia police detectives met with Taaysia Jones, who gave the officers a statement in which she indicated that on the late evening hours of November 27, 2017, Appellant came to visit her at the Hospital of the University of Pennsylvania (HUP) where Jones was being treated for an unrelated matter. N.T., 11/17/20, at 75, 77-79. Jones indicated that Appellant was frantic and stated that he had "fucked up" by killing a girl he met on Facebook. *Id*. at 76, 89-93. Jones explained that Appellant had shared the details of the killing, how he set the victim's body on fire, and how he had disposed of the body in a pile of leaves. *Id*. at 83.

At trial, Jones testified that she did not remember telling the detectives that Appellant had confessed to the murder, but also claimed that she did not want to testify as she feared for her safety. *Id*. at 84. The Commonwealth presented video surveillance footage from the HUP emergency room taken on November 27, 2017, at approximately 11:30 p.m., showing a male and female conversing for about twenty minutes. *Id*. at 49-58. Jones admitted that she and Appellant were the two individuals recorded in the video. *Id*. at 97-99.

The Commonwealth also presented subpoenaed records from Facebook demonstrating that Appellant and the victim exchanged over 400 messages in the month before the victim's murder. *Id*. at 23-45. In those messages, on the day before the victim's murder, Appellant invited the victim to come to his apartment in Philadelphia and gave her directions on how to get there by bus. *Id*. at 38-44.

At trial, Appellant's defense theory was that his father, Kenny Swaringer, killed the victim and directed Appellant to dispose of her body. When defense counsel cross-examined Swaringer and suggested he was responsible for the victim's death, Swaringer adamantly denied this accusation and expressed outrage at defense counsel's suggestion that he killed the victim, who Swaringer referred to as a "little girl."  N.T., 11/16/20, at 54.

Swaringer asserted that he was not home that evening, as he was watching Monday Night Football at his friend Orlando Eakins' home.  *Id*. at 47.  Swaringer admitted he had been released from prison on October 3, 2017 and was on probation at the time of the victim's murder.  *Id*. at 37.

In response to the defense's theory that Swaringer was the perpetrator of the victim's murder, the Commonwealth called Eakins to testify and he confirmed that Appellant was at his home the evening of November 27, 2017, watching a football game with a couple of friends.  *Id*. at 109.

Eakins further testified that on the same night, Appellant had been calling his phone trying to reach Swaringer, who did not have a cell phone. *Id*. When Appellant asked to speak to Swaringer, Eakins indicated that Swaringer declined to do so as he was watching the football game.  *Id*. at 115.  Eakins indicated that Appellant would not tell him what was wrong, but Appellant indicated that he "got himself into something and was going to get out of it."  *Id*. at 113.

At the conclusion of Appellant's bench trial, the Honorable Rose Marie DeFino-Nastasi convicted of Appellant of the aforementioned charges.[1] The trial court sentenced Appellant to life in prison without parole for the murder conviction along with consecutive sentences of 2½ to 5 years' imprisonment for possession of an instrument of crime, 1-2 years' imprisonment for abuse of a corpse, and 1-2 years' for unlawful restraint. This timely appeal followed.

Appellant raises the following issues for our review on appeal:

1. Did not the lower court err by falling to evaluate whether the Commonwealth exercised due diligence before denying Appellant's motion for dismissal pursuant to Pa.R.Crim.P. 600?

2. Did not the lower court err by applying an incorrect standard in determining whether evidence of a witness's prior offenses was relevant before ruling the evidence inadmissible?

Appellant's Brief, at 3.

We first review Appellant's challenge to the lower court's decision to deny his pretrial motion pursuant to Pa.R.Crim.P. 600. In doing so, we employ the following standard of review:

> [i]n evaluating Rule [600] issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

---

[1] The trial court acquitted Appellant of charges of kidnapping, arson, and risking a catastrophe.

*Commonwealth v. Leaner*, 202 A.3d 749, 765-66 (Pa.Super. 2019) (citation omitted; brackets in original). An appellate court's scope of review is "limited to the evidence on the record of the Rule 600 evidentiary hearing" and the trial court's findings of fact. *Commonwealth v. Watson*, 140 A.3d 696, 698 (Pa.Super. 2016). Appellate courts must construe the facts in the light most favorable to the prevailing party. *Id*.

Rule 600 states that: "[t]rial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). In regards to the computation of time, Rule 600 provides that "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence, while "[a]ny other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600(C)(1). Pa.R.Crim.P. 600(C)(1). The Commonwealth's failure to bring the defendant to trial before the expiration of the Rule 600 time period constitutes grounds for dismissal of the charges with prejudice. Pa.R.Crim.P. 600(D)(1).

Rule 600 permits certain circumstances to extend the Commonwealth's deadline. Those delays also include delay caused by the defendant and delay that occurred "as the result of circumstances beyond the Commonwealth's control and despite its due diligence," such as delay in the time for trial that is attributable to the judiciary. Pa.R.Crim.P. 600(C)(1)-(2); Pa.R.Crim.P. 600, cmt. "In determining whether the Commonwealth has exercised due

- 7 -

diligence, the courts have explained that due diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." Pa.R.Crim.P. 600, cmt. (citations omitted).

Our Supreme Court has clarified that:

time attributable to the normal progression of a case simply is not "delay" for purposes of Rule 600. We realize that, given this Court's holding that periods of judicial delay are excludible from calculations under the rule, courts of original jurisdiction must apply judgment in distinguishing between delay attributable to the court and that which should be allocated to a party.

These courts also have discretion, however, to differentiate between time necessary to ordinary trial preparation and judicial delay arising out of the court's own scheduling concerns. Accordingly, where a trial-ready prosecutor must wait several months due to a court calendar, the time should be treated as "delay" for which the Commonwealth is not accountable.

*Commonwealth v. Mills*, 162 A.3d 323, 325 (Pa. 2017) (citations omitted).

We also acknowledge the Supreme Court's recent precedent *Commonwealth v. Harth*, 252 A.3d 600 (Pa. 2021), specifying that the Commonwealth must exercise "due diligence throughout the life of the case," such that the Commonwealth must prove it acted with due diligence before a trial court excludes a specific time period from its Rule 600 time computation on the basis of "judicial delay" or other scheduling problems. *Harth*, 252 A.3d at 618 (adopting *Mills*, 162 A.3d at 327 (Wecht, J., concurring)).

In this case, the Commonwealth filed its complaint against Appellant on November 29, 2017. As such, the mechanical run date was November 29,

2018.[2]  On December 11, 2019, Appellant filed a motion seeking dismissal under Rule 600.  At a hearing held on December 13, 2019 before Judge DeFino-Nastasi, the defense conceded on the record that 175 days of delay were attributable to the defense.  As such, defense counsel specifically stated that the adjusted run date for the purposes of Rule 600 was May 23, 2019. Motion, 11/11/19, at 3 (unpaginated); N.T., 12/13/19, at 7-8.

At the Rule 600 hearing, the defense argued that the homicide calendar judge, the Honorable Kathryn Streeter Lewis, erred in marking several continuances as excludable time attributable to the defense.  Judge DeFino-Nastasi was reluctant to examine the circumstances underlying these continuances as she felt she could not overturn the rulings of a judge of coordinate jurisdiction.  N.T., 12/13/19, at 7-8.  Nevertheless, Judge DeFino-Nastasi concluded that, even if assuming arguendo that those periods of time were not excludable delay, the Commonwealth had still met its burden to bring Appellant to trial in a timely manner pursuant to Rule 600.

Appellant's trial was originally scheduled for March 4, 2019, which was before the adjusted run date, which both parties agreed was May 23, 2019. Docket entries on January 18, 2019 reveal that the trial court found both parties were ready for trial and the trial date would remain March 4, 2019.

---

[2] "The phrase 'mechanical run date' refers to the date by which the trial must commence pursuant to the time limitations set forth in Rule 600 … and is calculated by adding 365 days to the date on which the criminal complaint was filed."  **Harth**, 252 A.3d at 607 n. 7 (citation omitted).

However, the parties never made it to trial on that date as another docket entry on January 18, 2019 shows that the trial judge assigned to preside over Appellant's trial, the Honorable Diana Anhalt, was transferred from the Criminal Division to the Civil Division of the Court of Common Pleas. As such, Appellant's trial had to be reassigned to another homicide judge. Judge DeFino-Nastasi indicated that the case was returned to the homicide calendar room and rescheduled to the courtroom with the earliest possible trial date consistent with the schedules of the parties and the court.

During this time, while the parties were waiting for trial to be rescheduled, the defense requested several continuances to consider plea offers extended by the prosecution. Ultimately, Appellant rejected the plea offers and chose to go to trial, which was scheduled for March 20, 2020.

We also note that Appellant's trial scheduled for March 20, 2020 had to be rescheduled again as on March 16, 2020, as the Supreme Court of Pennsylvania issued an order declaring a judicial emergency in light of the COVID-19 pandemic, which allowed local courts to close and suspend Rule 600 calculations. Appellant's trial was again scheduled for the earliest possible date which was November 16, 2020.

In light of these facts, we uphold the trial court's conclusion that, by the defense's own calculations, the Commonwealth brought Appellant to trial in a timely manner and the excess delay was not the result of the Commonwealth's lack of due diligence as it occurred after the prosecution was ready for trial and was outside the Commonwealth's control.

We reject Appellant's argument that Judge DeFino-Nastasi erred by failing to assess the Commonwealth's due diligence over the life of the case pursuant to the Supreme Court's decision in *Harth*.  The trial court complied with the *Harth* decision's mandate, which requires the Commonwealth "to demonstrate that it acted with due diligence before a trial court excludes time from its Rule 600 time computation on the basis of 'judicial delay.'"

The trial court found that the Commonwealth was not responsible for the "judicial delay" caused by Judge Anhalt's reassignment and the court system's need to reschedule Appellant's trial to March 20, 2020 as the Commonwealth was not at fault for this reassignment and was trial-ready during that time.  The trial court noted that this delay was lengthened by defense requests for continuances to consider the prosecution's plea offers, and the parties were scheduled to go to trial at the next available trial date.

As such, the trial court did find that the Commonwealth acted with due diligence during this time period before concluding it was excludable time as a result of judicial delay.  *See Mills*, 162 A.3d at 325 (finding that "where a trial-ready prosecutor must wait several months due to a court calendar, the time should be treated as 'delay' for which the Commonwealth is not accountable").[3]

---

[3] The only other time period that the trial court found constituted judicial delay was the time period during the judicial emergency due to the COVID-19 pandemic in which Rule 600 time calculations were suspended.

With respect to Appellant's argument that the trial court erred when it declined to review Judge Street Lewis's rulings that certain time was excludable, Appellant fails to recognize or challenge Judge DeFino-Nastasi's finding that the Commonwealth had met its burden to bring Appellant to trial within the time limitations set forth by Rule 600, even assuming *arguendo* that the contested time periods were not deemed to be excludable time. As such, we find the trial court properly denied Appellant's motion pursuant to Rule 600.

In his second claim, Appellant contends that the lower court erred in denying his motion to introduce evidence of prior bad acts of his father, Swaringer in order to cast doubt on Appellant's guilt. In reviewing Appellant's challenge to the lower court's discretion to admit certain evidence, we are guided by the following standard:

> [t]he admissibility of evidence is a matter within the sound discretion of the trial court and will be reversed only where there is a clear abuse of discretion. Our standard of review of a challenge to an evidentiary ruling is therefore limited. Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Williams*, 241 A.3d 1094, 1101 (Pa.Super. 2020) (quoting *Commonwealth v. Lekka*, 210 A.3d 343, 353–354 (Pa.Super. 2019) (internal citations and quotations omitted)).

Appellant sought to introduce evidence that Swaringer was convicted of aggravated assault in both 2002 and 2014 to support the defense theory that

Swaringer was the true perpetrator of the victim's murder or, in the alternative, that Swaringer had a motive to fabricate his statement to the police to curry favor with authorities as he was on probation at that time. N.T. 11/4/20, at 36. At the hearing on this motion, defense counsel did not give any more detail about the facts underlying these convictions.

In response, the prosecutor shared that in the 2014 case, Swaringer assaulted several police officers by punching them as they were attempting to take him into custody. N.T., 11/4/20, at 42-46. With respect to Swaringer's 2002 conviction, the prosecutor indicated that Appellant had shot at a 44-year-old man with a firearm. *Id*.

Appellant argues that that the lower court employed the incorrect standard in assessing the admissibility of "third-party guilt evidence" in violation of Supreme Court's recent decision in ***Commonwealth v. Yale***, 249 A.3d 1001 (Pa. 2021).

In ***Yale***, our Supreme Court reaffirmed the well-established principle that a defendant has the right "to present evidence that someone else committed the crime of which he is accused" as the defendant "should be allowed to prove a fact which would logically produce a doubt of his guilt in the mind of the jury." *Id*. at 1014 (quoting ***Commonwealth v. Loomis***, 113 A. 428, 431 (Pa. 1921)). ***See also Commonwealth v. Ward***, 605 A.2d 796 (Pa. 1992) (emphasizing that a defendant has fundamental right to present evidence of third person's motive to commit the crime charged so long as the evidence is relevant and does not violate the rules of evidence).

The Supreme Court held in *Yale* that lower courts have been incorrectly employing heightened similarity standards for admissibility pursuant to Pa.R.E. 404(b) in determining whether evidence of "third person guilt" can be admitted by the defendant to show he was not the perpetrator of the crime charged. *Yale*, 249 A.3d at 1014.

The *Yale* Court distinguished Rule 404(b), which it found codified Pennsylvania's common law principles which prohibited the prosecution from admitting crimes, wrongs, or other bad act evidence to show that a defendant had a propensity to act in a certain manner or was more likely to commit the crime charged. *Id*. (quoting *Shaffner v. Commonwealth*, 72 Pa. 60, 65 (1872) (holding that "[i]t is not proper to raise a presumption of guilt on the ground that, having committed one crime, the depravity it exhibits makes it likely the defendant would commit another").

The *Yale* Court recognized that Rule 404(b) provides that prior bad act evidence may not be used to show propensity but may be admissible under limited circumstances to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident" provided that the probative value of the evidence outweighs its potential for unfair prejudice. Pa.R.E. 404(b). However, bad act evidence is only admissible if "1) if a logical connection exists between the bad act(s) and the crime charged, linking them for a purpose the defendant intended to accomplish, or 2) if the bad acts manifest a signature crime." *Yale*, 249 A.3d at 1014 (quoting

*Commonwealth v. Hicks*, 156 A.3d 1114, 1143 (Pa. 2017) (Donohue, J., dissenting)).

Accordingly, the *Yale* Court found that Rule 404(b) was designed to limit the prosecution's use of evidence "to prevent unfair prejudice to a defendant whose liberty is at stake and to prevent the potential loss of the presumption of innocence." *Yale*, 249 A.3d at 1015. In contrast, the *Yale* Court pointed out that the same prejudice considerations are not a concern with third-party guilt evidence, as the "third person implicated by the defendant's evidence is not prejudiced because that person is not facing the possibility of a criminal conviction, especially a conviction based on a 'jury's willingness to assume his present guilty from his prior misdeed.'" *Id*. at 1020.

As such, the Supreme Court determined that an assessment of whether third-person guilty evidence is admissible is not subject to the heightened standard set forth in Rule 404(b), but rather is guided by the traditional evidentiary inquiries in Rules 401 through 403. Specifically, the Supreme Court provided that:

> [g]iven the construct of Pa.R.E. 404(b) and the absence of prejudice to an alternative perpetrator, evidence of that person's crimes, wrongs or other acts lies outside the contours of Rule 404(b) when introduced by a criminal defendant. Rather, determining the admissibility of third person guilt evidence requires nothing more than the traditional inquiries prompted by our rules of evidence.
>
> The threshold inquiry with admission of evidence is whether the evidence is relevant. Evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence. Pa.R.E. 401(a), (b). "All relevant evidence is admissible, except as otherwise provided by law."

[Pa.R.E. 402.] Evidence that tends to support the accused's version of events is relevant and admissible. If believed by the jury, such evidence might raise a reasonable doubt as to the defendant's guilt.

In the case of third person guilt evidence, the relevant inquiries into admissibility are: Does the third person guilt evidence have a tendency to make the existence of any fact that is of consequence to the determination of the issue, e.g., the defendant's culpability, more probable or less probable than it would be without the evidence. Pa.R.E. 401. If so, is the probative value of the third person guilt evidence outweighed by any danger of "confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

*Yale*, 249 A.3d at 1021-22 (some citations omitted).

While the *Yale* court distanced itself from "the use of the shorthand 'highly detailed similarity' to describe the evidence of bad acts of a third person required to make it relevant," the Court indicated a more suitable shorthand would be the phrase "sufficiently similar." *Id*. at 1024. The Supreme Court clarified its mandate as follows:

[u]ltimately, the question is whether the evidence supports an inference that the defendant did not commit the crime and someone else did. The more detailed the similarity, the more likely a finding of relevance. But a lesser level of detail combined with other circumstances attendant to the crime charged and the third person's relationship to it are also pertinent considerations. So too are the temporal factors relative to the third person's bad acts and the crime charged.

*Id*.

In this case, Judge Anhalt denied Appellant's pretrial motion seeking to admit evidence of Swaringer's two prior aggravated assault convictions. At the motions hearing which predated the *Yale* decision, Judge Anhalt stated that "[t]he defense may introduce evidence that someone else committed a

crime that bears a *highly-detailed similarity* to the crime with which a defendant is charged." N.T., 11/4/20, at 46 (emphasis added). As such, Appellant's motion was not analyzed under the standard set forth in **Yale**.

As noted above, Appellant proceeded to a bench trial in which he was convicted and sentenced by Judge Defino-Nastasi. On appeal, Judge Defino-Nastasi concluded that evidence of Swaringer's prior convictions was properly excluded under the standard dictated by the **Yale** court.

We agree with Judge DeFino-Nastasi's assessment that Appellant's proposed third-party guilt evidence was not admissible after applying the traditional inquiries set forth in Rules of Evidence 401-403. Specifically, she found that:

> Swaringer's prior convictions for aggravated assault do not tend to make the defense theory – that [Swaringer] was the true perpetrator of the crime – more probable. The instant crime is of a vastly different, unique, and distinctive nature. The instant crime involved a minor, female victim who was lured to her killer's home via social media. The [killer's] subsequent acts of violence and abuse of her corpse suggest a depravity and premeditation absent from the circumstances of Swaringer's aggravated assault convictions.

Trial Court Opinion, 6/1/21, at 13-14.

We note that the defense did not provide any detail about Swaringer's convictions for aggravated assault or attempt to argue how such crimes were "sufficiently similar" to the victim's murder. **See Yale**, **supra**. We also emphasize that Appellant's 2002 conviction occurred more than fifteen years before the victim's murder. As such, we agree that the presentation of such

evidence of Swaringer's prior convictions would have resulted in undue delay and posed a danger of confusing the relevant issues at trial.

Moreover, we also agree with the trial court's assessment that, even if evidence of Swaringer's prior convictions should have been ruled admissible under the standard set forth in **Yale**, any error in excluding this evidence was harmless. Error may only be considered harmless where:

> (1) the error did not prejudice the defendant or the prejudice was de minimis; or (2) the erroneously admitted evidence was merely cumulative of other, untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

**Commonwealth v. Taylor**, 209 A.3d 444, 450 (Pa.Super. 2019) (quoting

**Commonwealth v. Williams**, 524 Pa. 404, 573 A.2d 536, 538–39 (1990)

(citation omitted)).

While the defense was not permitted to introduce evidence of Swaringer's prior convictions, defense counsel thoroughly cross-examined Swaringer as to the fine details of his statement to police and questioned Swaringer about the fact that he was on probation at the time of the victim's murder. Defense counsel asked Swaringer probing questions to determine if he was the true perpetrator of the victim's murder, which occurred in the apartment that Swaringer shared with his family.

Moreover, the Commonwealth presented overwhelming evidence to demonstrate Appellant was the sole perpetrator of the victim's murder. The

Commonwealth introduced private Facebook messages that Appellant exchanged with the victim within in the month before her death. Appellant sent messages of a suggestive nature to the minor victim, invited her to come visit him at his Philadelphia apartment, and even instructed her on how she could use public transportation to get to his home. The victim's last messages were sent to Appellant before her death.

Taaysia Jones gave the police a statement indicating that Appellant had confessed to murdering the victim who he had met on Facebook. Jones shared that Appellant had come to visit her on the same night that the victim had been murdered and had told her details about how he committed the murder by stabbing the victim multiple times, attempted to burn her body, and disposed of the body in a pile of leaves.

Jones's statement was corroborated by physical evidence discovered at the crime scene which linked Appellant as the perpetrator of the victim's murder. Officers discovered a bloody black Puma sweatshirt and t-shirt in his laundry basket, blood on the walls of his bedroom, bloody scissors in his wastebasket, and a pool of blood on the fire escape that was accessible from Appellant's bedroom. The victim's body was discovered in a pile of leaves with multiple stab wounds and burns. Video surveillance footage recorded Appellant wearing a black Puma sweatshirt behind his apartment building, dragging the victim's body into a pile of leaves. Upon Appellant's arrest in the afternoon following the murder, Appellant was still wearing blood-stained sweatpants and blood-stained boxer shorts.

Accordingly, we conclude that the prosecution presented overwhelming evidence of Appellant's guilt as the sole perpetrator of the murder that any prejudicial effect of the trial court's decision to deny Appellant's motion in limine was so insignificant by comparison that the error could not have contributed to the verdict.

Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*

Date: *3/7/2022*