J-S34031-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                     :           PENNSYLVANIA
                                   :
             v.                      :
                                   :
                                   :
CURTIS DAVIS                  :
                                   :
            Appellant        :     No. 1339 WDA 2021

Appeal from the Judgment of Sentence Entered October 14, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0001364-2021

BEFORE: DUBOW, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:      **FILED: OCTOBER 18, 2022**

Curtis Davis (Davis) appeals from the judgment of sentence imposed in the Court of Common Pleas of Allegheny County (trial court) following his bench conviction of carrying a firearm without a license.[1] Davis challenges the trial court's denial of his motion to suppress evidence and the sufficiency of the evidence supporting his conviction. We affirm.

**I.**

This case arises from a November 2020 incident during which police confiscated a firearm from a vehicle in which Davis had been traveling as a

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 6106(a)(1). Davis was found not guilty of possession of a small amount of marijuana, 35 P.S. § 780(a)(31).

front seat passenger. Following his arrest, Davis filed a motion seeking suppression of the evidence seized by police as unlawfully obtained. City of Pittsburgh Police Department Detective Santino Mammarelli was the sole witness at the August 26, 2021 suppression hearing.

Detective Mammarelli testified that has worked as a detective for eight years and has been involved in hundreds of narcotics investigations. (*See* N.T. Suppression Hearing, 8/26/21, at 3). On November 10, 2020, he was on routine patrol in an unmarked police vehicle with his partner Detective Louis Schweitzer in a high crime area known for open dug transactions, gun arrests and shootings. Detectives Mammarelli and Schweitzer had been shot at themselves in the immediate vicinity.

At about 10:00 p.m., the detectives encountered a vehicle with all four of its tires parked on a curb directly underneath a "No Parking" sign. Davis was standing outside the vehicle near the driver's side door talking to the female driver. The detectives activated their overhead lights and sirens and pulled up behind the vehicle's bumper. As they approached the car, Detective Mammarelli "observed [Davis] reach with his right hand to his waistband and what I believed—he was sort of cradling his hand as if he was concealing a firearm." (*Id.* at 6). Detective Mammarelli testified that Davis's behavior was consistent with his prior experience in making arrests involving firearms, including "how [Davis] was gripping, and then he didn't let go." (*Id.*) Davis quickly went around the vehicle and "jumped inside" the passenger's front

- 2 -

seat, and Detective Mammarelli saw "into the back windshield into the car and I observed him removing a firearm from the waistband and placing it under the passenger seat." (*Id.* at 6-7). At that point, Detective Mammarelli ordered Davis out of the vehicle and Davis stood at the rear of the car with Detective Schweitzer. Detective Mammarelli recovered the firearm and testified that he did so out of fear for their safety, acting "so quickly [because] once I saw him place the firearm under the seat, I wanted to remove him from the same place as the firearm for our safety as well as his." (*Id.* at 7).

On cross-examination, Detective Mammarelli explained that his initial observation was the vehicle on the curb and then "our attention was drawn to a male with a firearm." (*Id.* at 9). Although Detective Mammarelli did not initially see a firearm, he "observed the characteristics which drew me to further investigate, and I observed him remove it from his waistband and place it under the seat . . . once he got inside the vehicle, I watched him remove it and place it under the seat." (*Id.*). As Detective Mammarelli removed the firearm, his partner detained Davis and placed him under arrest. Davis told the detectives that he had marijuana on his person, and when asked if he had a permit for the gun, Davis "made it clear that he did not, as well as we ran him through NCIC [and] ran him through County Index and it determined that he did not have a license." (*Id.* at 11). At the conclusion of the hearing, the trial court took the matter under advisement pending the submission of briefs.

The trial court denied Davis's motion to suppress on September 16, 2021. In doing so, it found that Detective Mammarelli credibly testified that the area he and his partner were patrolling was a high crime area known for multiple incidents of shots fired; the vehicle was clearly parked illegally; the police had reasonable suspicion that criminal activity was afoot; given the totality of the circumstances, Davis's constitutional rights were not violated. (*See* Order, 9/16/21).

On October 14, 2021, Davis waived his right to a jury trial after a colloquy and elected to proceed to a stipulated bench trial. The Commonwealth submitted into evidence three exhibits, "all of which have been stipulated to in terms of the **admissibility** and authenticity": Exhibit 1, a certified Pennsylvania State Police gun licensure form showing that Davis did not have a valid license to carry a firearm on the date of his arrest; Exhibit 2, the Allegheny County Office of Medical Examiner and Crime Lab results stating that the .380 auto caliber pistol submitted for examination was test fired and found to be operable; and Exhibit 3, the transcript of the August 2021 suppression hearing. (N.T. Trial, 10/14/21, at 7) (emphasis added). The defense submitted no evidence and called no witnesses to testify on Davis's behalf. Davis averred that he was aware of his right to call character witnesses or testify himself, and that his decision not to do so was "knowing, intelligent and voluntary." (*Id.* at 9). During oral argument, defense counsel made no mention of the crime lab report concerning the firearm at Exhibit 2.

The trial court found Davis guilty of the firearms offense and sentenced him to a term of 18 months' probation. Davis timely appealed and he and the trial court complied with Rule 1925. **See** Pa.R.A.P. 1925(a)-(b). In its Rule 1925(a) opinion, the trial court stated its findings that Davis was not subject to a seizure at the time he was standing outside of the vehicle conversing with the female passenger, that police were justified in seizing the firearm, and that sufficient evidence supports his firearms conviction. (**See** Trial Court Opinion, 2/28/22, at 5-12).

## II.

## A.

Davis first challenges the trial court's denial of his suppression motion by arguing that the detectives detained him without reasonable suspicion that he was engaged in criminal activity. (**See** Davis's Brief, at 6, 14-29).[2] Davis

---

2

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an

disputes the trial court's finding that he was not subject to a seizure when he was standing outside the vehicle, claiming he "had no reason to know why the detective was conducting a stop, nor did he have any reason to know who that detective was stopping [as he] was standing outside the driver's window talking to the driver . . . and like any reasonable pedestrian, did not feel free to simply walk away and ignore the police." (*Id.* at 19; *see id.* at 17, 26). With regard to Detective Mammarelli's seizure of the firearm, Davis contends that it was the product of an unlawful warrantless search because the detective lacked probable cause or exigent circumstances to justify it. (*See id.* at 6, 30-32).

We begin by observing with regard to search and seizure law that:

> The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee the right of the people to be secure in their persons, houses, papers, and possessions from unreasonable searches and seizures. To secure the right of citizens to be free from unreasonable search and seizure, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty. Because interactions between law enforcement and the general citizenry are widely varied, search and seizure law examine how the interaction is classified and if a detention has occurred.

---

appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Prizzia*, 260 A.3d 263, 266 (Pa. Super. 2021) (citation omitted).

The focus of search and seizure law remains on the delicate balance of protecting the right of citizens to be free from unreasonable searches and seizures and protecting the safety of our citizens and police officers by allowing police to make limited intrusions on citizens while investigating crime. In assessing the lawfulness of citizen/police encounters, a central, threshold issue is whether . . . the citizen-subject has been seized.

The first level of interaction is a 'mere encounter' (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an 'investigative detention' must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or 'custodial detention' must be supported by probable cause.

\* \* \*

When initially evaluating the level of interaction between law enforcement and a citizen to determine if a seizure occurred, courts conduct an objective examination of the totality of the surrounding circumstances.

The totality-of-the-circumstances test is ultimately centered on whether the suspect has in some way been restrained by physical force or show of coercive authority. Under this test, **no single factor controls the ultimate conclusion as to whether a seizure occurred**—to guide the inquiry, the United States Supreme Court and this Court have employed an objective test entailing a determination of whether a **reasonable person** would have felt free to leave or otherwise terminate the encounter. What constitutes a restraint on liberty prompting a person to conclude that he is not free to leave will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs.

*Commonwealth v. Thomas*, 273 A.3d 1190, 1195–97 (Pa. Super. 2022),

*appeal denied*, 2022 WL 3223306 (Pa. filed Aug. 10, 2022) (citations omitted;

emphasis added).

Additionally, the following factors indicate that a seizure occurred: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Commonwealth v. Livingstone*, 174 A.3d 609, 621 (Pa. 2017) (citation omitted). Absent evidence of these factors, "otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." *Id.* (citation omitted).

Further, "out of concern for officer safety, Pennsylvania search and seizure jurisprudence also permits certain limited intrusions upon the liberty of passengers in lawfully detained vehicles." *See Commonwealth v. Malloy*, 257 A.3d 142, 150 (Pa. Super. 2021) (citation omitted). Therefore, officers may order passengers to remain in a car for the duration of a lawful stop or may order passengers out of a lawfully stopped vehicle without reasonable suspicion that criminal activity is afoot to alleviate potential safety concerns. *See id.*

Instantly, the trial court concluded that there was nothing in the record to indicate that Davis was seized at the time he was standing outside the driver's side window. (*See* Trial Court Op., at 7). The court explained:

> There is no evidence that Defendant was given any instruction or direction by Detective Mammarelli or his partner at that time or in any way was restricted in his movement. In fact . . . the testimony establishes that it was not until Detective Mammarelli observed Defendant remove a firearm from his waistband and conceal it under the front seat that he was given

- 8 -

an instruction to exit the vehicle. Considering the totality of the circumstances, the attempt to conceal the firearm under the front seat of the vehicle created reasonable suspicion that Defendant's possession of the firearm was unlawful or other criminal activity was afoot and warranted Detective Mammarelli's further investigation and securing the firearm while interacting with Defendant and the driver of the vehicle. Therefore, Defendant was not illegally seized as alleged.

(Trial Ct. Op., at 7-8).

With regard to Davis's claim that the firearm recovered by Detective Mammarelli in the front passenger area of the vehicle was the product of an unconstitutional warrantless search, unsupported by probable cause or exigent circumstances, the trial court determined:

> The testimony in this case established that Defendant was first observed outside of the vehicle parked directly under a no parking sign and then he voluntarily walked to the passenger side of the vehicle and sat in the passenger seat as Detective Mammarelli approached the vehicle. As he approached the vehicle, Detective Mammarelli observed Defendant take a firearm from his waistband and place it under the seat. Defendant was then asked to exit the vehicle.
>
>     \*    \*    \*
>
> Mammarelli testified that he did observe furtive movements in that he saw Defendant attempt to conceal the firearm that he had in his waistband by placing it under the front passenger seat. The apparent attempt to conceal the weapon by removing the firearm from his waistband and placing it under the seat was inconsistent with lawful possession of the firearm and, at least, raised a reasonable suspicion that criminal activity was afoot. . . . It is also clear that police may, for their own safety, request that drivers or passengers exit a vehicle and may conduct pat down frisks and wingspan searches of the occupants on a finding of reasonable suspicion. In this case, Defendant's actions in attempting to conceal the firearm in his possession created reasonable suspicion that justified the actions of Detective

- 9 -

Mammarelli. Therefore, the motion to suppress was appropriately denied.

(Trial Ct. Op., at 9, 11-12) (citations omitted).

The record supports the trial court's determination that suppression of the evidence was not warranted under the circumstances of this case. The testimony of Detective Mammarelli made clear that the detectives initially focused on the obvious Vehicle Code violation of the vehicle parked completely on the curb in a prohibited "No Parking" area. Given this context, Davis's argument that he had no reason to know who the detectives were approaching or why borders on frivolity. Applying the totality of the circumstances test, a reasonable person would have surmised that the police were investigating the driver for parking her car on the sidewalk, and that the lights and sirens were not activated for Davis, but for the driver who was illegally parked. Davis was not the driver of the car and was not even an occupant at that time. Furthermore, Davis elected not to testify at the suppression hearing as to his perception of the initial police interaction and, therefore, provided no alternative factual account of the encounter to dispute Detective Mammarelli's testimony, which the trial court expressly found credible.[3]

_____

[3] Davis's reliance on **Livingstone**, **supra**, for the proposition that he was seized as of the moment the detectives activated overhead lights and sirens, even though he was standing outside the car, is misplaced. (**See** Davis's Brief, at 18-19). In **Livingstone**, a state trooper pulled his marked police cruiser alongside a vehicle pulled over to the shoulder of a highway, activating the emergency lights. After asking the driver and sole occupant of the vehicle if

With regard to Detective Mammarelli's seizure of the firearm, we concur with the trial court that his actions were appropriate for officer safety, given that the detectives were patrolling in a high crime area known for gun violence in which they had been shot at themselves in the past. Detective Mammarelli confiscated the firearm **after** he observed Davis's furtive movements, which he testified, based on his experience, indicated Davis's concealment of a weapon, and he directly observed Davis's handling of the gun. Simply put, Davis created a potentially dangerous situation by jumping into the passenger seat of the blatantly illegally parked vehicle with a gun and attempting to hide it. Detective Mammarelli explained that he was fearful for his safety and "acted so quickly [because] once I saw him place the firearm under the seat, I wanted to remove him from the same place as the firearm for our safety as well as his." (N.T. Suppression, at 7). Because the trial court's findings on the suppression issue are fully supported by the record, Davis's first issue merits no relief.

_____

she was okay and where she was going, the trooper pulled his vehicle in front of her car as another trooper pulled behind it. Our Supreme Court concluded that a seizure occurred when the trooper pulled his police vehicle with its emergency lights activated alongside the car, and that the seizure was not supported by any degree of suspicion of criminal activity. **See id.** at 625. In contrast, in the instant case, the detectives did not block Davis's path to leave the scene and he was not the driver of the illegally parked vehicle, as he was standing outside the car speaking to the driver.

- 11 -

**B.**

Davis next contends that the evidence was insufficient to convict him of carrying a firearm without a license. (**See** Davis's Brief, at 33-35).[4] He maintains the Commonwealth failed to prove that the object seized from the vehicle was the same firearm identified in the crime lab report, entered into evidence as Exhibit 2 at trial. (**See id.** at 6, 35).

Section 6106 of the Uniform Firearms Act provides in relevant part:

(a) Offense defined.—

(1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S. § 6106(a)(1).

_____

[4]

Our standard of review in a sufficiency of the evidence challenge is to determine if the Commonwealth established beyond a reasonable doubt each of the elements of the offense, considering all the evidence admitted at trial, and drawing all reasonable inferences therefrom in favor of the Commonwealth as the verdict-winner. The trier of fact bears the responsibility of assessing the credibility of the witnesses and weighing the evidence presented. In doing so, the trier of fact is free to believe all, part, or none of the evidence.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the defendant.

**Commonwealth v. Hopkins**, 67 A.3d 817, 820 (Pa. Super. 2013) (citations omitted).

We note with regard to the admission of evidence that the threshold inquiry is whether the evidence is relevant. *See Commonwealth v. Herring*, 271 A.3d 911, 919 (Pa. Super. 2022). Evidence is relevant if it has any tendency to make a fact of consequence in determining the action more or less probable than it would be without the evidence. *See* Pa.R.E. 401(a)-(b).

Instantly, the trial court rejected Davis's sufficiency claim concerning Exhibit 2 and explained its rationale as follows: "Exhibit 2 identifying the firearm as operable clearly indicated that Defendant was the 'participant' with whom the firearm was associated and further identified the correct offense tracking number associated with the charges for which Defendant was being tried. The evidence further established that only one firearm was in Defendant's possession. Further, had the stipulated laboratory report referred to a firearm that was not one in Defendant's possession at the time of his arrest then the report had no relevance to the trial." (Trial Ct. Op., at 6).

We agree with the trial court's rationale and further emphasize that by stipulating to the admissibility of Exhibit 2, Davis effectively conceded its relevance to the instant case. Defense counsel raised **no concerns** regarding the exhibit at trial, and it strains credulity that counsel would stipulate to admission of a report that was wholly unrelated to the only firearm involved in this case. Again, Davis was free to present evidence disputing the validity of the report, but declined to do so. The trial court, as fact-finder, was tasked with weighing all of the evidence presented, including Exhibit 2, and drew a

reasonable inference therefrom that the gun identified in the crime lab report was the same firearm seized from the passenger area of the vehicle. ***See Hopkins***, ***supra*** at 820. Accordingly, Davis's sufficiency claim merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/18/2022