J-S45014-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICHARD MICHAEL FRANK | : | |
| | : | |
| Appellant | : | No. 1246 EDA 2022 |

Appeal from the Judgment of Sentence Entered March 15, 2022
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0006429-2019

BEFORE: OLSON, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY OLSON, J.:                    **FILED MARCH 3, 2023**

Appellant, Richard Michael Frank, appeals from the judgment of sentence entered on March 15, 2022. We affirm.

The trial court ably summarized the underlying facts of this case:

> In [August 2019, the victim, K.F., was 13 years old and] living with her parents and sister in Upper Southampton Township, Bucks County, Pennsylvania. K.F. was having a difficult time with life. She got upset very easily. She wasn't showering or brushing her hair. She stopped going out with her friends. She didn't want to go anywhere with her mother, father or sister. When K.F. didn't want to go with her grandfather after making plans with him, her mother pressed her on what was wrong. K.F. replied, "Uncle Richie touches me in my privates." She was on the floor in a fetal position, shaking and crying. K.F. said [Appellant] touched her in the vagina but didn't want to say anything else.
>
> K.F.'s mother [(hereinafter "K.F.'s Mother")] called a co-worker and discussed the situation. The [co-worker] was mandated to report the incident and did so immediately. The police then contacted K.F. through her mother. An interview with a forensic interviewer at the Bucks County Children's

Advocacy Center ("CAC") was conducted on September 6, 2019. The interview was conducted by Maria Nye, an experienced, licensed interviewer at the CAC. The interview was recorded, admitted into evidence as Exhibit C-2 and published to the jury.

In the interview and at trial, K.F. described two incidents that occurred between her and [Appellant]. The first occurred in July[] 2017. K.F. went to her cousin's house in Philadelphia for a sleepover. [Appellant] asked K.F. if she wanted to go downstairs to the living room and watch her favorite television show. K.F. agreed and the two went downstairs and sat on a couch. [Appellant] began rubbing K.F.'s thigh with his fingers. He moved his fingers around K.F.'s underwear and into her vagina. K.F. told [Appellant] she had to use the bathroom and left the couch. While in the bathroom, K.F. texted her mother several times requesting to come home. [K.F.'s Mother] replied she could not pick her up until after work the next day.

K.F. first revealed that she texted her mother after the first assault at the Children's Advocacy Center interview. Detective [James] Shirmer, watching the interview, contacted [K.F.'s Mother] about retrieving the text messages. [K.F.'s Mother] was able to locate her phone containing the text messages. The messages were downloaded by the police. The text messages were introduced into evidence as trial exhibit C-12.

The second incident described by K.F. was when [Appellant] and his daughter dropped off their dog at K.F.'s apartment before going on vacation in the later part of summer[] 2017. K.F. was [lying] on her back in the bottom bunk in her bedroom. [Appellant] sat next to her and began rubbing K.F.'s stomach with his fingers under her clothes. K.F. got off the bed and began following the dog around the apartment.

Trial Court Opinion, 9/15/22, at 1-2 (footnotes omitted).

Following a jury trial, Appellant was found guilty of indecent assault, endangering the welfare of children, and corruption of minors.[1]  On March 15, 2022, the trial court sentenced Appellant to serve an aggregate term of one year, less one day, to two years, less one day, for his convictions.  Appellant filed a timely notice of appeal and raises two claims to this Court:

> [1.] Did the trial court err in admitting the hearsay testimony of [K.F.'s Mother]?
>
> [2.] Did the trial court err in admitting photographs of K.F. at age [11]?

Appellant's Brief at 8 (some capitalization omitted).

Both of Appellant's claims challenge the trial court's evidentiary rulings. As we have held:

> The admissibility of evidence is a matter within the sound discretion of the trial court and will be reversed only where there is a clear abuse of discretion.  Our standard of review of a challenge to an evidentiary ruling is therefore limited. Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

***Commonwealth v. Herring***, 271 A.3d 911, 918 (Pa. Super. 2022) (quotation marks, citations, and corrections omitted).

First, Appellant claims that the trial court erred when it admitted "the hearsay testimony of [K.F.'s Mother]."  Appellant's Brief at 12.  This claim fails.

---

[1] 18 Pa.C.S.A. §§ 3126(a)(7), 4304(a)(1), and 6301(a)(1)(ii), respectively.

As noted above, during the trial, K.F. testified that Appellant sexually assaulted her twice:  first, in July 2017, when Appellant used his fingers to rub the inside of K.F.'s vagina and, second, later in the summer of 2017, when Appellant went underneath K.F.'s shirt and rubbed K.F.'s stomach.  **See** N.T. Trial, 11/30/21, at 24-45.  K.F. testified that, in 2019, she told her mother about the abuse.  Her testimony on this issue was as follows:

> Q: [K.F.], was there a time in 2019 that you talked to your mom about what happened between you and [Appellant]?
>
> A: Yes.
>
> Q: And, specifically, what was happening between you and your mom?
>
> A: Me and my mom were arguing about something, because I didn't want to go to a soccer game with my grandpa.
>
> Q: And why was that?
>
> A: Because I didn't feel comfortable with men in the family.
>
> Q: And was that as a result of what [Appellant] had done?
>
> A: Yes.
>
> Q: When you told your mom that you didn't want to go to this soccer event, what happened?
>
> A: I told her – I told her I didn't want to go, because I didn't feel comfortable with men in the family because of what [Appellant] did to me.  And then she said – and then we – I started crying.
>
> Q: Okay. And did you tell your mom what happened between you and [Appellant]?
>
> A: Yes.

Q: Okay. And when you did tell you mom, were you crying?

A: Yes.

Q: And did you tell your mom what you just told us today?

A: Yes.

Q: What did your mom do?

A: She said – she said that she's sorry, and then we – she said that we're going to tell someone about this.

Q: And was there a time that you then went to meet with a woman at the Bucks County Child Advocacy Center?

A: Yes.

. . .

Q: And did you tell her what happened between you and [Appellant]?

A: Yes.

N.T. Trial, 11/30/21, at 47-49.

After K.F.'s testimony, K.F.'s Mother testified regarding the time, in 2019, when K.F. first told her of Appellant's molestation. K.F.'s Mother testified:

Q: Can you tell me, . . . was there a time that [K.F.] spoke to you about two incidents with [Appellant]?

A: Yes.

Q: Okay. When was that, approximately?

A: It was August of 2019, because I will never forget that day.

Q: And can you tell the members of the jury what happened on that day?

A: Me and [K.F.] had gotten into a little bit of an argument because [K.F.] had been declining with her emotional state. She was just getting very upset easily at things. She wasn't showering, wasn't brushing her hair. She stopped going out with her friends. She didn't want to go out with even me, her father and her sister.

. . .

Q: Can you just tell what precipitated [K.F.] disclosing something to you?

A: She was supposed to go somewhere with her grandfather. She told her grandfather yes, and then afterwards she told me she didn't want to go. I asked her, what is going on, because something is going on. She started crying and hyperventilating. And I kept saying to her, what is wrong. She said, you want to know why I have trust issues?

[Appellant's Counsel]: I'll object as to hearsay.

[Trial Court]: Overruled.

Q: You can proceed, ma'am.

A: She said, [Appellant] touches me. And she was on the floor crying, while my younger daughter watched this. And I said, what do you mean? And she said, [Appellant] touches me in my privates.

Q: And what was her demeanor when she made these statements to you?

A: She was shaking, on the floor in a fetal position, and she wouldn't stop crying.

Q: Did she tell you where he touched her?

[Appellant's Counsel]: Objection. Hearsay.

[Trial Court]: That objection is overruled.

A: When I tried to get the information out of her, she said, in my vagina. And that's about as much information as I could get out of her at that moment.

Q: And what was her demeanor when she made that statement to you?

A: She was still crying and shaking, and I was hugging her.

Q: And what did you do with the information that she provided to you?

A: I didn't know what to do. I was trying to figure out how to help her and how to tell my husband at the same time without him doing something stupid. I called one of my co-workers asking what – you know, their advice.

. . .

I – I told [K.F.] that we will – like, let's go to bed and we'll talk about it in the morning, after we have a clearer head, and then it was reported to [the National Organization for Victim Assistance ("NOVA")].

Q: And NOVA – was a [Child Advocacy Center ("CAC")] interview then scheduled for [K.F.]?

A: Yes.

N.T. Trial, 12/1/21, at 24-28.

On appeal, Appellant claims that the trial court erred when it overruled his hearsay objections to the testimony of K.F.'s Mother. Further, Appellant claims that he is entitled to the vacation of his convictions, as the Commonwealth's case against him "rest[ed] wholly on [K.F.'s] credibility" and the admission of K.F.'s Mother's testimony allowed the Commonwealth to bolster K.F.'s credibility. Appellant's Brief at 20. The Commonwealth counters, arguing that K.F.'s Mother's testimony was not offered for the truth

of the matter asserted, but merely to explain her subsequent course of conduct and to explain why she reported the assaults to her co-worker and, later, to NOVA, and why K.F. was interviewed by CAC. Further, the Commonwealth argues, any error in admitting the testimony was harmless, as it was merely cumulative of K.F.'s own, unchallenged testimony. Commonwealth's Brief at 9-18.

Hearsay is a statement "the declarant does not make while testifying at the current trial or hearing," that "a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c)(1) and (2). "Hearsay generally is inadmissible unless it falls within one of the exceptions to the hearsay rule delineated in the Pennsylvania Rules of Evidence." *Commonwealth v. Sandusky*, 203 A.3d 1033, 1054 (Pa. Super. 2019) (citations and quotation marks omitted). However, if an out-of-court statement is not offered for the truth of the matter asserted, the statement is not hearsay and can be admitted for a non-truth purpose. *Commonwealth v. Fitzpatrick*, 255 A.3d 452, 479 (Pa. 2021).

Moreover, "evidence that would constitute inadmissible hearsay if offered for one purpose may be admitted for another purpose." *Commonwealth v. Underwood*, 500 A.2d 820, 822 (Pa. Super. 1985). For example, "[a]n out of court statement offered not for its truth but to explain the witness's course of conduct is not hearsay." *Commonwealth v. Rega*, 933 A.2d 997, 1017 (Pa. 2007).

Here, the challenged testimony of K.F.'s Mother was not offered to prove the truth of the matter asserted, *i.e.*, that Appellant, in fact, sexually abused K.F. Instead, the testimony was offered to explain the course of conduct that K.F.'s Mother took in response to K.F.'s statements and to explain: why K.F.'s Mother contacted her co-worker; why K.F.'s allegations against Appellant were reported to NOVA; and, why K.F. was later interviewed by CAC. ***See***, ***e.g.***, N.T. Trial, 12/1/21, at 27 (The Commonwealth asked K.F.'s Mother: "**[a]nd what did you do with the information that [K.F.] provided to you?**," with K.F.'s Mother responding that she contacted her co-worker and, as a result, the allegations were reported to NOVA and K.F. was interviewed by CAC) (emphasis added).

Further, even if the testimony constituted inadmissible hearsay, the admission of the evidence was harmless beyond a reasonable doubt. Error is harmless if:

> (1) the prejudice to the appellant was nonexistent or *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted, substantially similar and properly admitted evidence; or (3) the properly admitted and uncontradicted evidence was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Hardy***, 918 A.2d 766, 777 (Pa. Super. 2007).

In this case, Appellant objected to the following statements from K.F.'s Mother: 1) that K.F. said that she has "trust issues" because "[Appellant] touches me" and 2) that K.F. said that Appellant touches her vagina. ***See***

N.T. Trial, 12/1/21, at 24-28. However, earlier in the trial, K.F. testified that, when she told her mother about the abuse, she told her mother: 1) she "didn't feel comfortable with men in the family because of what [Appellant] did to" her and 2) she told her mother "what [she] just told [the jury] today," *i.e.*, that Appellant sexually abused her twice, including once when he rubbed the inside of her vagina. *See* N.T. Trial, 11/30/21, at 47-49 and 36-47.

When comparing the challenged testimony from K.F.'s Mother with K.F.'s earlier, unchallenged testimony, it is apparent that the statements are substantively identical. Thus, even if K.F.'s Mother's testimony constituted hearsay, K.F.'s Mother's testimony was merely cumulative of K.F.'s own untainted and unchallenged testimony. As such, even if K.F.'s Mother's testimony constituted hearsay, the admission of her testimony was harmless beyond a reasonable doubt. *See Hardy*, 918 A.2d at 777. Appellant's first claim on appeal thus fails.

Next, Appellant claims that the trial court erred when it admitted a photograph that "depicted [K.F.] at the age of [11], the age at which the assaults were said to have occurred." Appellant's Brief at 21. According to Appellant, the photograph of K.F. was not relevant and was merely introduced to "inflame the minds and passions of the jury." *Id.* at 24.

Relevance is the threshold question for admissibility of evidence. *Commonwealth v. Cook*, 952 A.2d 594, 612 (Pa. 2008). "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference

or presumption regarding a material fact." ***Commonwealth v. Drumheller***, 808 A.2d 893, 904 (Pa. 2002). We previously declared:

> Trial judges generally enjoy broad discretion regarding the admission of potentially misleading or confusing evidence. Trial judges also have the authority to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice or confusion. ***See*** Pa.R.E. 403 ("Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury."). Furthermore, the function of the trial court is to balance the alleged prejudicial effect of the evidence against its probative value, and it is not appropriate for an appellate court to usurp that function.

***Commonwealth v. Parker***, 882 A.2d 488, 492 (Pa. Super. 2005) (citations omitted).

As the trial court explained, Appellant's claim on appeal is meritless:

> K.F. was born [in November] 2005. At the time of the criminal conduct in this case, she was [11] years of age. At the time of her initial disclosure to her mother in August 2019, she was [13] years of age. At the time of her testimony at trial in late November 2021, she was [16] years of age. During the testimony of [K.F.'s Mother], the prosecutor [introduced] trial exhibit C-3 into evidence as [] K.F.'s fifth grade school picture. It was admitted without objection and published to the jury.
>
> Thereafter, the following exchange occurred:
>
> > [Commonwealth:] Then I'd like you to take a look at what has been marked as C-4.
> >
> > [Appellant's Counsel:] Your Honor, at this point I'm going to object. We already have one picture.
> >
> > [Trial Court:] Okay.

- 11 -

[Appellant's Counsel:] I'm not sure the purpose of the second.

[Commonwealth:] Your Honor, I believe it is important for the jury to see how [K.F.] looked at the time of this incident. That photograph shows a picture of her approximate height, and then the jury can then determine her approximate weight when the incident occurred. I think that's important, because there has been a time period that passed due to factors, even beyond the Commonwealth's control, due to Covid, and I think it's important that they understand the height and weight of the victim at the time that this incident occurred.

[Trial Court:] All right. I'll allow this, but this is the last picture.

[Commonwealth:] Okay. Yes, I believe - - all right. We'll address that.

[N.T. 12/1/21, at 12-13.]

[The trial court] overruled [Appellant's] objection to the admission of a second photograph of [K.F.]. The first photograph is a closeup of [K.F.'s] face and head. The second photograph shows [K.F.] standing and displaying a certificate. It shows her entire body and gives a sense of her height and weight. [The trial court] believed it was appropriate for the jury to see how [K.F.] appeared at the time of the assault. The admissibility of evidence is in the trial court's discretion and will not be reversed absent an abuse of that discretion. . . . [I]t was not an abuse of discretion to admit the second photograph of K.F.

Trial Court Opinion, 9/15/22, at 11-13 (footnotes omitted).

We agree with the trial court's determination that the second photograph was relevant, as it depicted K.F. "at the time of the assault." **See**

**id.** at 12. Further, we fail to see how the admission of a photograph depicting K.F. "standing and displaying a certificate" prejudiced Appellant in any way.

Thus, we conclude that the trial court did not abuse its discretion when it admitted the challenged photograph of K.F. Appellant's claim to the contrary fails.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/3/2023