J-S07035-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                               :          PENNSYLVANIA
                               :
             v.                    :
                               :
                               :
DAVON TAMEL GRISSOM           :
                               :
            Appellant         :    No. 1043 MDA 2024

Appeal from the Judgment of Sentence Entered February 20, 2024
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0000049-2023

BEFORE: NICHOLS, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.:                 **FILED: JULY 2, 2025**

Appellant, Davon Tamel Grissom, appeals from the judgment of sentence entered in the Lycoming County Court of Common Pleas, following his jury trial convictions for two counts each of possession of a controlled substance with intent to deliver ("PWID") and criminal use of a communication facility.[1] We affirm.

The relevant facts and procedural history of this appeal are as follows. During the summer of 2022, Lycoming County's Narcotics Enforcement Unit utilized a confidential informant to conduct two (2) controlled purchases of cocaine from Appellant. On January 26, 2023, the Commonwealth filed a criminal information charging Appellant with various drug offenses. Prior to

---

[1] 35 P.S. § 780-113(a)(30) and 18 Pa.C.S.A. § 7512(a), respectively.

trial, Appellant filed a motion *in limine* seeking to exclude "any reference to the black sedan [Appellant] was driving being registered to an individual from Philadelphia[.]" (Motion *in Limine*, filed 12/11/23, at ¶16). Appellant insisted that this evidence was "prejudicial due to the association Philadelphia has with drugs and that drugs in Williamsport come from Philadelphia." (*Id.*) The court denied Appellant's motion on December 12, 2023.

Appellant's jury trial commenced on December 14, 2023. Before opening statements, the court conducted an on-the-record meeting with counsel in chambers. At that time, the prosecutor stated that she planned to call Williamsport Police Officer Tyson Minier. The officer would testify that in February 2022, he observed Appellant driving a black Ford Taurus, and "running the license plate it came back that the registered owner had a warrant." (N.T. Trial, 12/14/23, at 6). Appellant subsequently utilized the same vehicle to drive to the controlled purchases at issue. Thus, the prosecutor noted that information linking Appellant to the vehicle helped police to confirm Appellant's identity during the current investigation. Defense counsel objected to the proposed testimony arguing "that it's the prejudicial side of being pulled over—having a previous police contact[.]" (*Id.* at 7). The court overruled the objection.

At trial, the Commonwealth called Detective Sarah Edkin to testify regarding her role in facilitating the controlled purchases. Throughout her direct examination, Detective Edkin referred to Appellant as the "drug dealer"

while explaining what occurred during the controlled purchases. At the conclusion of the direct examination, the court provided the jury with a mid-morning recess. At that point, the court conducted another on-the-record meeting with counsel in chambers where defense counsel objected to the detective's use of the term "drug dealer." (*See id.* at 63). The prosecutor noted that she would not object to a curative instruction, if the court deemed it appropriate. After the recess, immediately before Detective Edkin's cross-examination, the court provided a curative instruction.

During the lunch recess, Appellant absconded. The case proceeded in Appellant's absence, and the Commonwealth called Detective Tyson Havens, who assisted with the controlled purchases. During the detective's direct examination, the prosecutor introduced a photograph of Appellant taken during one of the controlled purchases. The photograph prompted a line of questioning regarding Appellant's "unique markings or tattoos." (*Id.* at 154). Consequently, Detective Havens described "a tattoo under [Appellant's] right eye," which depicted "a series of lines almost like the New York Yankees' symbol." (*Id.*) Defense counsel objected on the basis of speculation, but the court overruled the objection.

Following trial, the jury convicted Appellant of two counts each of PWID and criminal use of a communication facility. In January 2024, law enforcement officers discovered Appellant in New Jersey and returned him to Lycoming County. The court conducted Appellant's sentencing hearing on

February 20, 2024. The court began the hearing with a lengthy summary of the contents of Appellant's pre-sentence investigation ("PSI") report. The court also reviewed "a number of letters in support of [Appellant]." (N.T. Sentencing Hearing, 2/20/24, at 12). At the conclusion of the hearing, the court sentenced Appellant to an aggregate term of eleven (11) to twenty-two (22) years' incarceration.[2] Appellant timely filed a post-sentence motion on February 29, 2024, which the court denied on June 26, 2024.

Appellant timely filed a notice of appeal on July 24, 2024. On July 25, 2024, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Following an extension, Appellant filed his Rule 1925(b) statement on August 28, 2024.

On appeal, Appellant raises two issues for this Court's review:

> Whether the sentencing court abused its discretion by imposing a sentence that doesn't reflect [Appellant's] history, the amount of confinement is not consistent with the public's need for protection or the gravity of the offense, and the aggregate sentence of 11-22 years is unduly harsh.

> Whether trial court erred by denying Appellant's motion *in limine* and overruling objections at trial and subsequently admitting [Pa.R.E.] 404(b) evidence of Appellant's prior police contacts and prior bad acts.

---

[2] For count 1, PWID, the court sentenced Appellant to forty-eight (48) to ninety-six (96) months' imprisonment. For count 2, criminal use of a communication facility, the court sentenced Appellant to a consecutive term of thirty-six (36) to seventy-two (72) months' imprisonment. For count 3, PWID, the court sentenced Appellant to a consecutive term of forty-eight (48) to ninety-six (96) months' imprisonment. For count 4, criminal use of a communication facility, the court sentenced Appellant to a concurrent term of thirty-six (36) to seventy-two (72) months' imprisonment.

(Appellant's Brief at 8).

In his first issue, Appellant argues that the court violated the Sentencing Code by imposing a manifestly excessive and unduly harsh aggregate sentence. More specifically, Appellant maintains that the court did not properly consider "his age, outdated prior record, rehabilitative needs, characteristics, and substance use disorder." (*Id.* at 14). Appellant insists that the court "disproportionately sentenced Appellant to consecutive sentences resulting in an 11 to 22-year aggregate sentence that is inconsistent with sentencing factors." (*Id.* at 15). Appellant also asserts that the court gave "undue weight" to Appellant's "prior record rather than rehabilitation and deterrence." (*Id.*) Appellant concludes that the court abused its discretion in fashioning his sentence. We disagree.

As presented, Appellant's claim challenges the discretionary aspects of his sentence. *See Commonwealth v. Caldwell*, 117 A.3d 763, 768 (Pa.Super. 2015) (*en banc*), *appeal denied*, 633 Pa. 774, 126 A.3d 1282 (2015) (stating that challenge to imposition of consecutive sentences as unduly excessive, together with claim that court failed to consider rehabilitative needs, constitutes challenge to discretionary aspects of sentencing). "Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right." *Commonwealth v. Phillips*, 946 A.2d 103, 112 (Pa.Super. 2008), *cert. denied*, 556 U.S. 1264, 129 S. Ct. 2450, 174 L.Ed.2d 240 (2009). Prior to reaching the merits of a discretionary

aspects of sentencing issue:

> [W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 1410 [now Rule 720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (quoting ***Commonwealth v. Hyland***, 875 A.2d 1175, 1183 (Pa.Super. 2005)).

When appealing the discretionary aspects of a sentence, an appellant must invoke this Court's jurisdiction by including in his brief a separate concise statement demonstrating a substantial question as to the appropriateness of the sentence under the Sentencing Code. ***Commonwealth v. Mouzon***, 571 Pa. 419, 812 A.2d 617 (2002); Pa.R.A.P. 2119(f). "The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to **exceptional** cases." ***Phillips, supra*** at 112 (emphasis in original) (internal quotation marks omitted).

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." ***Commonwealth v. Anderson***, 830 A.2d 1013, 1018 (Pa.Super. 2003).

> A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Caldwell, supra* at 768 (quoting *Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa.Super. 2011)). An appellant's "challenge to the imposition of his consecutive sentences as unduly excessive, together with his claim that the court failed to consider his rehabilitative needs upon fashioning its sentence, presents a substantial question." *Id.* at 770.

Here, Appellant timely filed his notice of appeal, he preserved his issue by including it in his post-sentence motion, and his appellate brief includes a Rule 2119(f) statement. Appellant's claim also raises a substantial question as to the appropriateness of the sentence imposed. *See id.* Accordingly, we proceed to address the merits of Appellant's issue.

This Court reviews discretionary sentencing challenges based on the following standard:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, bias or ill-will.

*Commonwealth v. McNabb*, 819 A.2d 54, 55 (Pa.Super. 2003) (quoting *Commonwealth v. Hess*, 745 A.2d 29, 30-31 (Pa.Super. 2000)).

"When imposing sentence, a court is required to consider the particular

circumstances of the offense and the character of the defendant." ***Commonwealth v. Griffin***, 804 A.2d 1, 10 (Pa.Super. 2002), *cert. denied*, 545 U.S. 1148, 125 S. Ct. 2984, 162 L.Ed.2d 902 (2005). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." ***Id.*** "Where PSI reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Commonwealth v. Watson***, 228 A.3d 928, 936 (Pa.Super. 2020) (quoting ***Commonwealth v. Devers***, 519 Pa. 88, 101-02, 546 A.2d 12, 18 (1988)).

Instantly, the court conducted Appellant's sentencing hearing with the benefit of a PSI report. At the beginning of the hearing, the court read from the PSI report to make a record of the relevant sentencing considerations. (***See*** N.T. Sentencing Hearing at 2-12). The court also read the letters in support of Appellant, and it received statements from Appellant and his family members. (***Id.*** at 12-21, 27-32). Thereafter, the court briefly recounted Appellant's criminal history before summarizing its sentencing decision as follows:

> Although the [c]ourt fully recognizes that [Appellant's prior record] is not everything that [Appellant] is, and that is demonstrated by the several letters of support that the [c]ourt has received on [Appellant's] behalf and the kind words that have been spoken about him today. Those letters and kind words, however, need to be weighed against the fact that [Appellant's] 4 convictions are distinct and separate crimes warranting distinct and separate

- 8 -

punishment.

> [Appellant's] failure to accept responsibility in the face of overwhelming evidence of his guilt, he was indeed on video conducting the drug transactions with the confidential informant. The fact that [Appellant] fled in the middle of trial with a bench warrant being issued for his arrest and his apprehension 5 weeks later in New Jersey by the U.S. Marshalls, and the need to have him extradited back.

> *     *     *

> However, in consideration of [Appellant's] difficult childhood, and the apparent positive impact that [Appellant] has had on members of his family, and on members of the community, and the negative effect that [Appellant's] long incarceration will potentially have on his children, the [c]ourt will run count 4, criminal use of a communication facility, concurrently to the remaining counts.

(**Id.** at 36-37).

Here, the court considered the relevant sentencing factors and felt the need to balance any mitigating factors against the necessity of punishing Appellant for distinct and separate crimes. The court's reliance on the PSI report, combined with its on-the-record statement in support of the sentencing scheme, demonstrates that it was aware of the relevant sentencing considerations. **See Watson, supra**. On this record, the court did not abuse its discretion. **See McNabb, supra**. Therefore, Appellant is not entitled to relief on his challenge to the discretionary aspects of sentencing.

In his second issue, Appellant attacks several of the trial court's evidentiary rulings. Specifically, Appellant complains about Officer Minier's testimony linking Appellant to the black Ford Taurus. "First, it show[ed] prior

police contact with Appellant. Second, it show[ed] Appellant was linked to another individual who not only had police contact, but had an active warrant." (Appellant's Brief at 22). Appellant also insists that Detective Edkin's use of the term "drug dealer" created "more than a reasonable inference of Appellant's prior criminal activity and denied him of a fair trial." (*Id.* at 23). Finally, Appellant maintains that Detective Havens's testimony regarding Appellant's tattoo created "an inference that Appellant had prior police contact involving drug related activity."[3] (*Id.*) Appellant asserts that these pieces of evidence failed to meet any exception to the general prohibition against prior bad acts evidence, pursuant to Rule 404(b). Appellant concludes that the prejudicial effect of this evidence outweighed its probative value, and he is entitled to a new trial on this basis. We disagree.

This Court's standard of review for issues regarding the admissibility of evidence is well settled:

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but

---

[3] Appellant also complains about testimony from Detective Michael Caschera, another police witness who assisted with the controlled purchases. During his direct examination, Detective Caschera testified, "I knew who [Appellant] was." (N.T. Trial at 112). Appellant, however, failed to object to this testimony. Thus, Appellant has waived any appellate challenge to the propriety of this testimony. *See Commonwealth v. Molina*, 33 A.3d 51, 55 (Pa.Super. 2011) (*en banc*), *aff'd*, 628 Pa. 465, 104 A.3d 430 (2014) (stating "a defendant's failure to object to allegedly improper testimony at the appropriate stage in the questioning of the witness constitutes waiver").

is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. LeClair*, 236 A.3d 71, 78 (Pa.Super. 2020), *appeal denied*, 664 Pa. 546, 244 A.3d 1222 (2021) (quoting *Commonwealth v. Belknap*, 105 A.3d 7, 9-10 (Pa.Super. 2014)).

"Relevance is the threshold for admissibility of evidence." *Commonwealth v. Tyson*, 119 A.3d 353, 358 (Pa.Super. 2015) (*en banc*), *appeal denied*, 633 Pa. 787, 128 A.3d 220 (2015).

Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or tends to support a reasonable inference or proposition regarding a material fact. Relevant evidence may nevertheless be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Because all relevant Commonwealth evidence is meant to prejudice a defendant, exclusion is limited to evidence so prejudicial that it would

inflame the jury to make a decision based upon something other than the legal propositions relevant to the case. As this Court has noted, a trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events and offenses with which a defendant is charged.

*Commonwealth v. Danzey*, 210 A.3d 333, 342 (Pa.Super. 2019), *appeal denied*, 656 Pa. 9, 219 A.3d 597 (2019) (internal citation and quotation marks

- 11 -

omitted).

"Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). However, evidence of another crime, wrong, or act "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). "In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." *Id.* "However, bad act evidence is only admissible ... '1) if a logical connection exists between that bad act(s) and the crime charged, linking them for a purpose the defendant intended to accomplish, or 2) if the bad acts manifest a signature crime.'" ***Commonwealth v. Herring***, 271 A.3d 911, 919 (Pa.Super. 2022), *appeal denied*, ___ Pa. ___, 288 A.3d 865 (2022) (quoting ***Commonwealth v. Yale***, 665 Pa. 635, 659, 249 A.3d 1001, 1015 (2021)).

Instantly, the trial court found the evidence at issue to be admissible. Regarding Officer Minier's statements linking Appellant to the black Ford Taurus, the officer testified about a February 2022 incident:

> I was on patrol that evening in the Newberry section of Williamsport, and I observed a black Ford Taurus with the license plate KRL4769. The registered owner at the time had a warrant.
>
> I observed the vehicle and watched the driver park next to the Puff's in Newberry. He went into the Puff's store. I called some other officers around because he had a warrant,

and we went in and made contact.

We made contact with [Appellant] there inside the store. He provided me with his photo identification. I explained that you're not the guy we're looking for. And we left.

\* \* \*

I took the information from [Appellant] and put it in regarding, in our record system, that vehicle. So when you would put the registration in our system that vehicle pops up. I put in the comment field that on this day [Appellant] was the driver of that vehicle.

(N.T. Trial at 24-25). Testimony from subsequent witnesses established that Appellant drove the same vehicle to each of the controlled purchases. (*See id.* at 48, 114).

The trial court deemed this testimony relevant:

The evidence that the police associated [Appellant] with this vehicle because the owner had an outstanding warrant, to the extent it is prejudicial, does not outweigh the probative value of establishing a link between [Appellant's] vehicle outside of the confidential informant's apartment at the time of each controlled buy.

(*See* Opinion and Order Denying Post-Sentence Motions, filed 6/26/24, at 10-11) (footnote omitted). Considering the applicable standard of review, we agree with the court's conclusion that the evidence is not so prejudicial as to outweigh the probative value. *See Danzey, supra*. Moreover, to the extent that this testimony amounts to Rule 404(b) evidence, a logical connection exists between the purported bad act and the crimes charged. *See Herring, supra*.

Regarding Detective Havens' testimony about Appellant's tattoo,

- 13 -

defense counsel objected on the basis of speculation. Specifically, Detective Havens characterized the tattoo as "like the New York Yankees' symbol[.]" (N.T. Trial at 154). Defense counsel responded, "He is testifying as to what he thinks it is[.]" (*Id.*) At that point, the court interjected and overruled the objection. Thereafter, the following exchange occurred:

> [COMMONWEALTH:] Had you seen [Appellant] prior to this date?
>
> [WITNESS:] Yes.
>
> [COMMONWEALTH:] Okay. Would you have been able to view the tattoo?
>
> [WITNESS:] Yes.
>
> [COMMONWEALTH:] Okay. As you can see, [Appellant] is not here with us today. Earlier during the day outside of the courtroom did you see him and recognize him at any point?
>
> [WITNESS:] Yes. Numerous times today I saw [Appellant], and I recognized him.
>
> [COMMONWEALTH:] Okay. Where did you see him?
>
> [WITNESS:] Right out in the hallway here.

(*Id.* at 155). The prosecutor concluded the direct examination, and defense counsel did not advance a separate objection to claim that this testimony created an impermissible inference of prior police contact for drug-related activity. (*See id.* at 154-55). Defense counsel's failure to object on this specific basis results in the waiver of the current argument on appeal. *See Commonwealth v. Nabried*, 327 A.3d 315, 325 n.4 (Pa.Super. 2024)

(explaining that appellant complaining about admission of evidence will be confined to specific objection made in trial court; if counsel stated grounds for objection at trial, then all other unspecified grounds are waived and cannot be raised for first time on appeal).

Finally, we observe that Detective Edkin testified about the controlled purchases, and she repeatedly referred to Appellant as a drug dealer. When defense counsel objected to these references, the court replied:

> I certainly recall Detective Edkin using the term drug dealer. And I don't dispute your representation that she may have also used it in referring directly to [Appellant]. But I took it as using it in sort of a colloquial laymen's terms that this is a drug case, you know, the allegation is that he's a drug dealer.
>
> Obviously, the jury understands both from my preliminary remarks … that that's, in fact, the issue in this case that the Commonwealth needs to prove beyond a reasonable doubt; and it's their burden to do so.
>
> And you certainly are free in closing to address that specific concern in your closing that Detective Edkin kept referring to him as a drug dealer. But the truth of the matter is, that's for the jury to decide and not Detective Edkin to decide.
>
> If you want me to give a curative instruction, I will. But that's up to you to decide whether or not you want to request one.

(N.T. Trial at 64).

Appellant's counsel requested the curative instruction, the Commonwealth did not object, and the court addressed the jury as follows:

> [L]adies and gentlemen, during Detective Edkin's earlier testimony you may have heard her use the term drug dealer; and you may have also heard her refer perhaps on

- 15 -

> more than one occasion to [Appellant] as a drug dealer.
>
> That is not for Detective Edkin to determine. That is for you, as the jury, to determine. [Appellant] is presumed to be innocent and will remain so unless and until he has been proven guilty beyond a reasonable doubt.

(*Id.* at 68-69). We can presume that the court's instruction cured any undue prejudice that might have resulted from the witness's references. *See Commonwealth v. Poplawski*, 634 Pa. 517, 550, 130 A.3d 697, 717 (2015) (reiterating, "Juries are presumed to follow instructions"). Based upon the foregoing, the court did not commit reversible error through its various evidentiary rulings. *See LeClair, supra*. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/02/2025