J-S17039-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                          :            PENNSYLVANIA
                                          :
            v.                         :
                                          :
                                          :
JULIE JEAN                          :
                                          :
               Appellant          :      No. 1281 EDA 2024

Appeal from the Judgment of Sentence Entered March 21, 2024
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0004952-2023

BEFORE: MURRAY, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.:                **FILED JULY 18, 2025**

Appellant, Julie Jean, appeals from the judgment of sentence entered in the Montgomery County Court of Common Pleas, following her jury trial convictions for first-degree murder and criminal conspiracy.[1] We affirm.

The trial court's opinion set forth the relevant facts of this appeal as follows:

> On April 11, 2023, at around 7:35 a.m., Officer Tierre Welton of the 35th District Philadelphia Police Department was with his partner, in uniform and in their patrol car, headed to breakfast in Melrose Shopping Center. There, Officer Welton observed a women running across Cheltenham Avenue to tell them she heard gunshots coming from the area of a black Ford vehicle at the Dunkin' Donuts. The officer approached that vehicle and saw that the victim was deceased and that a child was in the back seat crying.
>
> Detective Terrence Lewis of the Montgomery County

---

[1] 18 Pa.C.S.A. §§ 2502(a) and 903, respectively.

Detective Bureau—Forensic Sciences Unit collected fired cartridge casings ("FCC's") from a semiautomatic weapon. All of the FCC's were the same caliber, .9-millimeter Ruger.

Detective Ryan Murray of the Cheltenham Township Police Department testified that surveillance footage around the murder scene depicted a silver-colored sedan following closely behind the victim's car as she was heading to the Dunkin' Donuts. The video captured an individual approach the victim's car and then return to his silver car. The individual ran back to the silver sedan and drove out of the shopping center onto Cheltenham Avenue.

The silver sedan was determined to be a Mercury Sable. The Mercury Sable was seen in video footage arriving at the victim's residence around 7:00 a.m. and following the victim's car from her residence to the scene of the shooting. After the shooting the individual ran back to the Mercury Sable and fled. From one of the surveillance cameras Detective Murray obtained the license plate from the Mercury Sable. An image of the Mercury Sable was released to the public and it was later recovered by Philadelphia police.

Surveillance footage also showed that several days prior to the murder on April 7, 2023, the Mercury Sable was seen on the victim's street and drove past her residence twice at the Lynnewood Gardens apartment complex. The apartment complex is very large with about 1800 units. The victim lived at 1905 Humphrey Merry Way, William Hayes' residence was 1919 Humphrey Merry Way on the same block, and Appellant also lived in the same complex on 7575 Washington Lane, about a half mile from the victim's residence.

William Hayes testified that he and the victim were neighbors, he had known her for several years, and in 2020, their friendship turned into a romantic relationship. They started dating [in] late 2020.

Mr. Hayes stated that he met Appellant through the childcare center where he had worked, in late 2020, 2021. Appellant's daughter attended the child-care center. In February of 2021, Mr. Hayes moved to another childcare

- 2 -

program, and five or six months later, Appellant's children started at that center. [Mr. Hayes] denied knowing in advance that [Appellant's] children would attend there. The relationship with Appellant turned into a sexual relationship, towards the end of 2021, and lasted about 10 months. In August/September of 2022, Appellant moved to … the Lynnewood Garden apartment complex and was now living around the corner from him. Mr. Hayes also denied that he had anything to do with [Appellant's] move there.

When Mr. Hayes began a relationship with Appellant, his relationship with the victim was "off" at that time, and although they saw each other they were not in a relationship. The victim did not know about his relationship with Appellant. At some point, he wanted to end his relationship with Appellant and move forward with the victim. Appellant did not take it well and started to harass him.

Around December 5, 2022, the victim found out about Appellant. On December 7, 2022, Mr. Hayes obtained a protection from abuse order ("PFA Order") against Appellant. After a hearing was held on December 15, 2022, the PFA order was continued until September 15, 2023. The victim attended the hearing [with] Mr. Hayes, and on their way out of the hearing there was a verbal altercation between the victim and Appellant. Police had to break it up.

Despite the PFA Order, later that night, Mr. Hayes made an impulsive decision and took the victim to Appellant's house to clear the air between both of them. He apologized to both, but told Appellant that he was moving forward with the victim. Appellant continued to contact Mr. Hayes.

Several hours after the PFA hearing, phone records showed that Appellant contacted Perry Mattison, one of her children's fathers, and there were several communications between them that day. About two months later, Mr. Mattison provided Appellant with [co-defendant Zakkee] Alhakim's contact information, which she saved to her phone.

Over the next several months, cell phone records showed Appellant provided [Mr.] Alhakim information about the

victim, what she looked like, and where she lived. [Mr.] Alhakim's phone records showed that he plotted out the route to the victim's home and that he drove past her residence several times prior to the murder. Appellant and [Mr.] Alhakim met up several times, including the time Appellant went with [Mr.] Alhakim to purchase a Mercury Sable vehicle, which was involved in the murder.[2] On the day of the murder, surveillance video showed the Mercury Sable arrive at the victim's residence and follow her to the Dunkin' Donuts. Video also showed an individual exit the Mercury Sable, approach the victim's vehicle and shoot at her. Cell phone evidence showed that [Mr. Alhakim's] cell phone traveled this same path that the video depicted. The individual got back into the Mercury Sable and fled the scene.

[Mr.] Alhakim was developed as a suspect in the April 11, 2023, murder by Detective Joseph Cremen with the Philadelphia Police Department. [Mr. Alhakim] had been involved in a prior murder on April 7, 2023, in which a Mercury Sable was used. The detective later determined that the Mercury Sable in the April 7th incident was the same one that was seen at the Dunkin' Donuts on Aprill 11th.

Through the cell phone records, [Mr.] Alhakim was connected to Appellant and her involvement in the murders.

(Trial Court Opinion, filed 8/23/24, at 2-7) (record citations and footnote omitted).

On April 24, 2023, the Commonwealth filed a criminal complaint charging Appellant with murder and conspiracy. The Commonwealth subsequently filed a notice of joinder to consolidate the charges against

_____

[2] About two weeks before the murder, Appellant and Mr. Alhakim went to purchase the vehicle from Vincent Graham. (*See* N.T. Trial, 3/19/24, at 223-29). At trial, Mr. Graham identified a receipt for the Mercury Sable with Appellant's name listed as the purchaser. (*Id.* at 230).

Appellant and Mr. Alhakim for trial. On January 9, 2024, the Commonwealth filed a motion to admit prior bad acts evidence regarding the events leading to the issuance of the PFA Order. The Commonwealth argued that "the evidence of [Appellant's] prior harassment of both William Hayes and [the victim] shows her motive and intent to murder [the victim]." (Motion, filed 1/9/24, at ¶55). By order entered January 17, 2024, the court granted the Commonwealth's motion.

On March 21, 2024, a jury convicted Appellant of first-degree murder and conspiracy. That same day, the court sentenced Appellant to an aggregate term of life imprisonment. Appellant timely filed a post-sentence motion on March 28, 2024, which the court denied on April 4, 2024.

On May 3, 2024, Appellant timely filed a notice of appeal. On May 13, 2024, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Following the grant of an extension, Appellant timely filed her Rule 1925(b) statement on July 15, 2024.

Appellant now raises three issues for this Court's review:

> Whether the evidence at trial failed to establish beyond a reasonable doubt that Appellant conspired to kill the victim … or that Appellant had the specific intent to kill?
>
> Whether the trial court abused its discretion in not granting a new trial, as the verdict was against the weight of the evidence?
>
> Whether the trial court erred and abused its discretion by admitting "other acts" evidence under [Pa.R.E.] Rule 404 of the alleged events that lead to the issuance of a PFA Order for William Hayes against Appellant.

(Appellant's Brief at vii).

Appellant's first two issues are related, and we address them together. Appellant argues the Commonwealth failed to establish that she possessed the specific intent to murder the victim. While the Commonwealth may have presented evidence to establish an agreement between Appellant and Mr. Alhakim to intimidate the victim, Appellant contends that the Commonwealth did not demonstrate that she was aware of, or participated in, any plan to murder the victim. Appellant asserts that Mr. Alhakim displayed a "pattern of impulsive violence, indicating that he had a volatile temperament and was prone to shooting with little to no provocation." (**Id.** at 13). Appellant maintains that such evidence undermined any assertion that Appellant possessed the specific intent to murder the victim. Moreover, Appellant maintains that she could not reasonably anticipate or know that Mr. Alhakim possessed a firearm and would use deadly force. Under these circumstances, Appellant concludes that the Commonwealth presented insufficient evidence to support her first-degree murder and criminal conspiracy convictions, and the convictions were against the weight of the evidence. We disagree.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the

verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019) (quoting *Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa.Super. 2013)).

In reviewing a challenge to the weight of the evidence, our standard of review is as follows:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the … verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> *Commonwealth v. Small*, 559 Pa. 423, [435,] 741 A.2d 666, 672-73 (1999). Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the

verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

***Commonwealth v. Champney***, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert. denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (most internal citations omitted).

Additionally, the Crimes Code defines the offense of criminal conspiracy as follows:

**§ 903.  Criminal conspiracy**

**(a)   Definition of conspiracy.**—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1)  agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2)  agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a).

"To sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent, and (3) an overt act was done in furtherance of the conspiracy." ***Commonwealth v. Melvin,*** 103 A.3d 1, 42 (Pa.Super. 2014).

The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a

particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt.

*Id.* at 42-43 (quoting **Commonwealth v. McCall**, 911 A.2d 992, 996-97 (Pa.Super. 2006)). "Once the trier of fact finds that there was an agreement and the defendant intentionally entered into the agreement, that defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act." **Commonwealth v. Barnes**, 871 A.2d 812, 820 (Pa.Super. 2005), *affirmed*, 592 Pa. 301, 924 A.2d 1202 (2007).

The Crimes Code defines first-degree murder as follows:

**§ 2502. Murder**

**(a) Murder of the first degree.**—A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

18 Pa.C.S.A. § 2502(a).

To find a defendant guilty of first-degree murder a jury must find that the Commonwealth has proven that he or she unlawfully killed a human being and did so in an intentional, deliberate and premeditated manner.

It is the element of a willful, premeditated and deliberate intent to kill that distinguishes first-degree murder from all other criminal homicide.

*Commonwealth v. Schoff*, 911 A.2d 147, 159 (Pa.Super. 2006) (internal citations and quotation marks omitted). "Specific intent to kill can be established though circumstantial evidence, such as the use of a deadly weapon on a vital part of the victim's body." *Commonwealth v. Montalvo*, 598 Pa. 263, 274, 956 A.2d 926, 932 (2008), *cert denied*, 556 U.S. 1186, 129 S.Ct. 1989, 173 L.Ed.2d 1091 (2009).

Instantly, the trial court evaluated the Commonwealth's evidence as follows:

The argument that [Mr.] Alhakim was just a violent person and killed the victim on his own is not supported by the evidence. There was simply no evidence that [Mr.] Alhakim knew of the victim in any way prior to his contact with Appellant. He did not know the victim, who she was, where she lived, and what she looked like. All of this information was provided by Appellant to [Mr.] Alhakim. In addition, the evidence proved that Appellant initiated the purchase and ultimately purchased the Mercury Sable that [Mr.] Alhakim used in the murder. Further, Appellant displayed a consciousness of guilt when she denied knowing about the murder in her interview with police, despite her phone download showing she accessed several articles about the murder on the same day as the murder; and the fact she deleted all communications with [Mr. Alhakim] prior to her interview with police.

(Trial Court Opinion at 11). Our review of the record confirms these findings.

In addition to the circumstances described by the court, we add that cell phone records revealed that Appellant and Mr. Alhakim traveled together to withdraw cash before Appellant purchased the Mercury Sable. (*See* N.T. Trial,

- 10 -

3/20/24, at 190-93). This evidence provided additional proof of Appellant's overt acts in furtherance of the conspiracy. ***See Melvin, supra.*** Viewing the totality of the evidence in the light most favorable to the Commonwealth as verdict winner, sufficient evidence established each of the requisite elements of criminal conspiracy. ***See Sebolka, supra***. Because the Commonwealth's evidence established that Appellant entered into an agreement with Mr. Alhakim, Appellant is also liable for Mr. Alhakim's overt acts committed in furtherance of the conspiracy. ***See Barnes, supra***. Finally, we decline Appellant's invitation to substitute our judgment for the jury, and we conclude that Appellant is not entitled to relief on her weight claim. ***See Champney, supra***. Based on the foregoing, Appellant is not entitled to relief on her first two claims.

For her final issue, Appellant argues that the inclusion of evidence regarding the PFA Order undermined the fairness of her trial. While Appellant does not contest the circumstances leading to the issuance of the PFA Order, she insists that the court erred in admitting the order at trial. By introducing the PFA Order, Appellant asserts "the Commonwealth was effectively inviting the jury to make a prejudicial and impermissible leap: that because [Appellant] was found to pose a risk to one person, she must also pose a risk to others and is therefore likely guilty[.]" (Appellant's Brief at 25). Appellant contends that the PFA Order added no substantive value to the Commonwealth's case, and the prejudicial effect of its admission outweighed

any probative value. Moreover, Appellant asserts that the PFA Order failed to meet any exception to the general prohibition against prior bad acts evidence, pursuant to Rule 404(b). Appellant concludes that the court abused its discretion by permitting the introduction of the PFA Order. We disagree.

This Court's standard of review for issues regarding the admissibility of evidence is well settled:

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. LeClair*, 236 A.3d 71, 78 (Pa.Super. 2020), *appeal denied*, 664 Pa. 546, 244 A.3d 1222 (2021) (quoting *Commonwealth v. Belknap*, 105 A.3d 7, 9-10 (Pa.Super. 2014)).

"Relevance is the threshold for admissibility of evidence." *Commonwealth v. Tyson*, 119 A.3d 353, 358 (Pa.Super. 2015) (*en banc*), *appeal denied*, 633 Pa. 787, 128 A.3d 220 (2015).

> Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or tends to support a reasonable inference or proposition regarding a material fact. Relevant evidence may nevertheless be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of

cumulative evidence. Because all relevant Commonwealth evidence is meant to prejudice a defendant, exclusion is limited to evidence so prejudicial that it would

inflame the jury to make a decision based upon something other than the legal propositions relevant to the case. As this Court has noted, a trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events and offenses with which a defendant is charged.

*Commonwealth v. Danzey*, 210 A.3d 333, 342 (Pa.Super. 2019), *appeal denied*, 656 Pa. 9, 219 A.3d 597 (2019) (internal citation and quotation marks omitted).

"Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). However, evidence of another crime, wrong, or act "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). "In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." *Id.* "However, bad act evidence is only admissible … '1) if a logical connection exists between the bad act(s) and the crime charged, linking them for a purpose the defendant intended to accomplish, or 2) if the bad acts manifest a signature crime.'" *Commonwealth v. Herring*, 271 A.3d 911, 919 (Pa.Super. 2022), *appeal denied*, ___ Pa. ___, 288 A.3d 865 (2022) (quoting

*Commonwealth v. Yale*, 665 Pa. 635, 659, 249 A.3d 1001, 1015 (2021)).

Instantly, the trial court determined that the probative value of the PFA Order outweighed any unfair prejudice:

> The victim's murder grew out of the fact that the PFA [Order] was issued. On the day of the PFA hearing, there was a verbal altercation between the victim and Appellant in which the police were called. In addition, a few hours after that hearing, Appellant contacted Mr. Mattison, who eventually sent [Mr.] Alhakim's contact information to Appellant. These facts together can show that it was that hearing that was the catalyst for the entire plan to come into motion. This evidence was certainly important for the jury to consider when deciding on Appellant's involvement in the murder, which the defense was contesting.

(Trial Court Opinion at 20). (record citations omitted).

Here, the PFA Order linked Appellant, the victim, and Mr. Hayes, and it demonstrated a logical connection between Appellant's prior bad acts and the motive for her involvement in the murder. *See Herring, supra*. Based on the foregoing, we cannot say that the court abused its discretion by admitting the prior bad acts evidence. *See LeClair, supra*. Thus, Appellant is not entitled to relief on her final issue, and we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/18/2025