J-S28039-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WALTER MIKAL JENKINS, JR. | : | |
| | : | |
| Appellant | : | No. 1038 MDA 2024 |

Appeal from the Judgment of Sentence Entered June 21, 2024
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0002050-2022

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED: SEPTEMBER 15, 2025**

Appellant, Walter Mikal Jenkins, Jr., appeals from the judgment of sentence entered in the York County Court of Common Pleas, following his jury trial conviction for persons not to possess firearms and possession with intent to deliver a controlled substance ("PWID").[1]  We affirm.

The relevant facts and procedural history of this case are as follows.  On January 28, 2022, police officers executed a search warrant at 651 W. Market Street in York, Pennsylvania.  Officers found Appellant asleep on a futon in a rear bedroom, and a firearm and multiple cell phones next to him.  Officers also recovered bags of marijuana from Appellant's bedroom, as well as a substance later identified as crack cocaine, and drug packaging materials and scales under the bed.  At the time of the execution of the search warrant,

---

[1] 18 Pa.C.S.A. § 6105 and 35 P.S. § 780-113(a)(30), respectively.

Appellant had an active warrant for his arrest.

On May 16, 2022, the Commonwealth filed a criminal information charging Appellant with two counts of PWID and one count of persons not to possess firearms. On June 6, 2023, Appellant filed a motion seeking to dismiss the Section 6105 charge, relying on *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1, 142 S.Ct. 2111, 213 L.Ed.2d 387 (2022) (rejecting use of means-end scrutiny in Second Amendment context and instead holding that, when Second Amendment's plain text covers individual's conduct, Constitution presumptively protects that conduct, and government must then justify regulation by demonstrating that it is consistent with Nation's historical tradition of firearm regulation). Specifically, Appellant argued that there was no historical tradition of disarming those who are fugitives from justice. On September 6, 2023, the court denied Appellant's motion.

On April 26, 2024, a jury found Appellant guilty of persons not to possess firearms and one count of PWID. The jury acquitted Appellant of PWID with regard to cocaine. On June 21, 2024, the court sentenced Appellant to 14 to 28 months' incarceration for the firearms conviction and 6 to 12 months' incarceration for PWID.[2]

_____

[2] The court imposed these sentences concurrent to a sentence of 21-42 years' imprisonment that Appellant was serving at docket No. CP-67-CR-0002930-2022. On December 9, 2024, this Court affirmed Appellant's judgment of sentence at docket No. 2930-2022. *See Commonwealth v. Jenkins*, 328
*(Footnote Continued Next Page)*

On July 19, 2024, Appellant timely filed a notice of appeal. That same day, the court ordered him to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. On August 9, 2024, Appellant timely complied.

On appeal, Appellant raises the following issues for review:

> Did the [trial] court err in allowing the Commonwealth to adduce damaging Rule 404(b) evidence at [Appellant's] trial in the absence of the written pretrial notice that is now explicitly required under the rule?

> Did the [trial] court abuse its discretion by instructing the jury that the mere existence of an active bench warrant meant [Appellant] was a fugitive from justice, as this absolved the Commonwealth of its duty to prove [Appellant's] awareness that he was being sought for court proceedings to show he was prohibited from possessing a firearm?

> Did the [trial] court err in refusing to dismiss [Appellant's] charge under 18 Pa.C.S. § 6105 for violating the United States and Pennsylvania Constitutions where the statute regulates conduct protected by these provisions and the Commonwealth failed to establish that this restriction is

_____

A.3d 1076 (Pa.Super. 2024). However, on July 8, 2025, the Pennsylvania Supreme Court granted Appellant's petition for allowance of appeal. *See Commonwealth v. Jenkins*, No. 18 MAL 2025 (Pa. filed Jul. 8, 2025). Relevant to the instant appeal, the Pennsylvania Supreme Court granted allowance of appeal to consider the constitutionality of Appellant's separate conviction under Section 6105 in that case. We discuss the import of this Court's decision in *Jenkins* in greater detail *infra*.

Further, although the court did not expressly state whether Appellant's sentences for PWID and persons not to possess firearms in the instant case were to be served consecutively or concurrently, the sentencing order reflects that both sentences were to begin on the date of imposition, June 21, 2024. (*See* Sentencing Order, 6/21/24). *See also* Pa.R.Crim.P. 705(B) (stating that if sentence is to run concurrently, sentence shall commence from date of imposition unless otherwise ordered by judge). Thus, the record indicates these sentences were imposed concurrently.

consistent with this nation's history of firearm regulation? (Appellant's Brief at 4).

In Appellant's first issue, he argues that the trial court erred by admitting text messages showing his involvement in uncharged drug transactions. Appellant contends that these messages implicate Pa.R.E. 404(b) and that as a result, the Commonwealth was required to provide him with written pre-trial notice that the messages would be introduced at trial. According to Appellant, the absence of the requisite notice or any legitimate reason for failing to provide it required exclusion of the text messages. Further, Appellant claims the evidence was prejudicial because the jury had focused on it in reaching its decision and therefore the decision likely affected the verdicts. Appellant concludes that this Court should vacate his convictions and judgment of sentence and remand for a new trial. We disagree.

This Court's standard of review for issues regarding the admissibility of evidence is well settled:

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. LeClair*, 236 A.3d 71, 78 (Pa.Super. 2020), *appeal denied*, 664 Pa. 546, 244 A.3d 1222 (2021) (quoting *Commonwealth v.*

*Belknap*, 105 A.3d 7, 9-10 (Pa.Super. 2014)).

"Relevance is the threshold for admissibility of evidence." *Commonwealth v. Tyson*, 119 A.3d 353, 358 (Pa.Super. 2015) (*en banc*), *appeal denied*, 633 Pa. 787, 128 A.3d 220 (2015).

> Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or tends to support a reasonable inference or proposition regarding a material fact. Relevant evidence may nevertheless be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Because all relevant Commonwealth evidence is meant to prejudice a defendant, exclusion is limited to evidence so prejudicial that it would
>
>> inflame the jury to make a decision based upon something other than the legal propositions relevant to the case. As this Court has noted, a trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events and offenses with which a defendant is charged.

*Commonwealth v. Danzey*, 210 A.3d 333, 342 (Pa.Super. 2019), *appeal denied*, 656 Pa. 9, 219 A.3d 597 (2019) (internal citation and quotation marks omitted).

"Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). However, evidence of another crime, wrong, or act "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan,

knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). "In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." *Id.* "However, bad act evidence is only admissible ... '1) if a logical connection exists between the bad act(s) and the crime charged, linking them for a purpose the defendant intended to accomplish, or 2) if the bad acts manifest a signature crime.'" *Commonwealth v. Herring*, 271 A.3d 911, 919 (Pa.Super. 2022), *appeal denied*, ___ Pa. ___, 288 A.3d 865 (2022) (quoting *Commonwealth v. Yale*, 665 Pa. 635, 659, 249 A.3d 1001, 1015 (2021)).

Rule 404(b) was amended on December 2, 2021[3] to require the Commonwealth to provide "reasonable written notice in advance of trial" of its intent to introduce such prior bad act evidence at trial. Pa.R.E. 404(b)(3). Notice pursuant to this rule "must be provided before trial in such time as to allow the defendant a fair opportunity to meet the evidence [and] should be sufficiently in advance of trial so the defendant and court have adequate opportunity to assess the evidence, the purpose for which it is offered, and whether the requirements of Pa.R.E. 403 have been satisfied[.]" Pa.R.E. 404, *Comment*. The written notice does not need to be formal, *i.e.* in the form of a pretrial motion; forms of discovery provided to the defense disclosing Rule 404(b) evidence is sufficient notice. *See Commonwealth v. Lynch*, 57 A.3d 120, 126 (Pa.Super. 2012); *Commonwealth v. Watkins*, No. 913 MDA

---

[3] This amended rule went into effect on April 1, 2022, well in advance of trial.

- 6 -

2024, unpublished memorandum at 9 n.4 (Pa.Super. filed Aug. 20, 2024)[4] (observing that there is no requirement that notice be formally given in order for evidence to be admissible, and that discovery provided to defense disclosing Rule 404(b) evidence is sufficient notice). ***See also Commonwealth v. Cintron***, No. 63 EDA 2024, unpublished memorandum at 9 (Pa.Super. filed Dec. 9, 2024), *appeal denied*, ___ Pa. ___, 337 A.3d 965 (2025) (observing legislature added notice in writing requirement but did not add requirement that writing be formal; holding notice through email communication was sufficient); ***Commonwealth v. Lucas***, No. 1057 WDA 2023, unpublished memorandum at 4-5 (Pa.Super. filed Aug. 1, 2024) (holding that evidence mentioned in criminal affidavit constituted sufficient written notice pursuant to Pa.R.E. 404(b)).

Instantly, the trial court observed:

> The text messages in question pertain to a conversation between [Appellant] and another individual, beginning on January 11, 2022 and ending on January 27, 2022. The date the search warrant was executed was January 28, 2022.
>
> During trial on April 23, 2024, and prior to jury being brought into the [c]ourtroom, there was discussion with the [c]ourt in regard to text messages which the Commonwealth indicated it was going to introduce. Defense [c]ounsel was objecting to their introduction at trial because they pre-dated the date of the incident as set forth in the information and because pursuant to Rule 404(b), the

---

[4] ***See*** Pa.R.A.P. 126(b) (stating this Court may rely on unpublished decisions of this Court filed after May 1, 2019 for their persuasive value).

Commonwealth should have provided advance notice to the defense prior to trial.

The text messages in question start on January 11, 2022 and end on January 27, 2022 (the date prior to the incident in question). The text messages pertain to [Appellant] having conversations with another person describing sales, collection of money, and things related to marijuana. [Appellant] was charged with, among other offenses, [PWID] marijuana. The [court] determined that the text messages were relevant to show intent to deliver marijuana.

[Appellant] claims that there was no notice by the Commonwealth until the middle of trial. While the Commonwealth did not file a formal Notice regarding the text messages, it did indicate to the [court] that the [text] messages … were provided to [d]efense [c]ounsel in discovery prior to trial. Moreover, pursuant to [Pa.R.E.] 404(b)(3), during trial, a trial court may excuse pre-trial notice of other crimes, wrongs, or acts "on good cause shown, of the specific nature, permitted use, and reasoning for the use of any such evidence the prosecutor intends to introduce at trial."

In the instant case, because the texts were included in pre-trial discovery, and because the text messages are relevant to show [Appellant's] intent in regard to marijuana and [PWID], there was good cause to excuse formal pre-trial notice.

(Trial Court Opinion, 12/9/24, at 5-6) (citations omitted).

We agree with the court's analysis. Appellant admits that the challenged evidence was included in discovery and he acknowledges multiple decisions of this Court wherein we held that the inclusion of the evidence in pre-trial discovery constituted sufficient notice. (**See** Appellant's Brief at 23). Nevertheless, Appellant asks this Court to reach a different result. We decline Appellant's invitation to do so, and deem the non-precedential decisions of this Court instructive here. Thus, the Commonwealth's inclusion of the text

- 8 -

messages in discovery was sufficient notice such that Appellant's first issue on appeal merits no relief. **See Cintron, supra**; **Watkins, supra**; **Lucas, supra**.

In his second issue, Appellant contends that the trial court misstated the law in its jury instructions. Appellant asserts that, pursuant to the suggested jury instructions for 18 Pa.C.S.A. § 6105, the court should have told the jury that a fugitive of justice must be aware that he is being sought for court proceedings. Instead, the court instructed the jury that the issuance of a bench warrant, on its own, makes a defendant a fugitive from justice. Appellant claims that the court's erroneous instruction most likely affected the jury's guilty verdict. Appellant concludes that we must vacate his conviction and sentence under Section 6105 and remand for resentencing on this ground. We disagree.

"The trial court has considerable discretion in fashioning a jury charge." **Commonwealth v. Gomez**, 224 A.3d 1095, 1102 (Pa.Super. 2019), *appeal denied*, 661 Pa. 484, 236 A.3d 1053 (2020). "The court is free to use its own expressions, provided it clearly and accurately conveys the applicable legal concepts at issue." **Id.** "In reviewing instructions to a jury, we consider the entire charge, 'not merely discrete portions thereof.'" **Id.** (quoting **Commonwealth v. Johnson**, 630 Pa. 493, 552, 107 A.3d 52, 87-88 (2014), *cert. denied*, 577 U.S. 831, 136 S.Ct. 43, 193 L.Ed.2d 52 (2015)).

Our Supreme Court "has never adopted the Pennsylvania Suggested Standard Jury Instructions, which exist only as a reference material available

to assist the trial judge and trial counsel in preparing a proper charge." ***Commonwealth v. Smith***, 548 Pa. 65, 80 n.11, 694 A.2d 1086, 1094 n.11 (1997). "Accordingly, strict adherence or non-adherence to any of the suggested charges is not necessarily dispositive of the issue of whether the jury charge is legal and proper." ***Id.***

Relevantly, Section 6105 of the Crimes Code prohibits "[a] person who is a fugitive from justice" from possessing, using, manufacturing, controlling, selling, or transferring a firearm. ***See*** 18 Pa.C.S.A. § 6105(c)(1). Pennsylvania Suggested Standard Criminal Jury Instruction 15.6105(1)(b) provides, in pertinent part, as follows:

> 15.6105 Persons Not to Possess, Use, Manufacture, Control, Sell, or Transfer a Firearm
>
> 1. The defendant has been charged with count *[number]* of the offense. To find the defendant guilty of this offense, you must find that the following elements have been proven beyond a reasonable doubt:
>
> *First*, that the defendant was a person prohibited by law from [possessing] [using] [controlling] [selling] [transferring] [manufacturing] [or] [obtaining a license to possess, use, control, sell, transfer, or manufacture] a firearm [or an electric or electronic incapacitation device]. To be prohibited, the Commonwealth must show that the defendant, at the time of this conduct:
>
> \*   \*   \*
>
> b. was a fugitive from justice, that is, was a person facing criminal charges [other than nonmoving or moving summary offense violations under the Motor Vehicle Code of the Commonwealth] and who was knowingly avoiding prosecution for such offense by not presenting himself or herself as required for court appearances in connection with

> that prosecution. Here, the Commonwealth charges that the defendant was a fugitive from the charge of *[charge]*[.]

Pa.SSJI (Crim) § 15.6105(1)(b) (brackets and emphasis in original) (some bracket reformatting provided).

The Pennsylvania Supreme Court has analyzed the definition of "fugitive from justice" as it is used in Section 6105 as follows:

> As we have seen, Black's Law Dictionary defines fugitive as:
>
> (1) Someone who flees or escapes; a refugee.
>
> (2) A criminal suspect or a witness in a criminal case who flees, evades, or escapes arrest, prosecution, imprisonment, service of process, or the giving of testimony, esp. by fleeing the jurisdiction or hiding
>
> In addition, Merriam-Webster's Dictionary defines "fugitive" as:
>
> (1) a person who flees or tries to escape: such as
>
> (a) a person who flees a country or location to escape danger (such as war) or persecution: REFUGEE
>
> (b) a person (such as a suspect, witness or defendant) involved in a criminal case who tries to elude law enforcement especially by fleeing the jurisdiction
>
> &mdash; called also *fugitive from justice*
>
> The foregoing definitions make clear that the terms "fugitive" and "fugitive from justice" are synonymous for our present purposes and include someone who evades the law or prosecution, and/or an individual in a criminal case who simply eludes law enforcement. In addition, our Rules of Civil Procedure provide a bench warrant may be issued by a court when a party fails to appear at a required hearing or court-mandated appointment, *i.e.* when the individual fails to comply with a court order to appear. **See** Pa.R.C.P. 1910.13-1 (court may issue bench warrant for arrest for

- 11 -

failure to appear pursuant to order of court). Consequently, a bench warrant issues only when an individual does not appear when required, and thus acts to elude or evade law enforcement or prosecution. It logically follows that an individual who evades law enforcement such that a bench warrant is issued—as appellant stipulated to doing here—is a fugitive as that term is commonly defined.

***Commonwealth v. Smith***, 660 Pa. 526, 541, 234 A.3d 576, 585 (2020)

(emphasis in original) (internal hyperlink and citations omitted).

Here, the court instructed the jury in relevant part:

You have heard evidence tending to prove that the defendant was a fugitive from justice. This evidence is before you for a limited purpose, that is for the purpose of tending to prove an element of the charge of being a person not to possess a firearm.

This evidence must not be considered by you in any other way than for the purpose I just stated. You must not regard this evidence as showing that the defendant is a person of bad character or criminal tendencies from which you might be inclined to infer guilt.

\* \* \*

The defendant has been charged with being a person not to possess a firearm. To find the defendant guilty of this offense, you must find that the Commonwealth has proven beyond a reasonable doubt that the defendant was a person prohibited by law from possessing a firearm.

To be prohibited, the Commonwealth must show that the defendant at the time of this conduct was a fugitive from justice. I hereby charge you that in Pennsylvania, a person against whom a warrant has been issued is a fugitive from justice.

(N.T. Trial, 4/24/24, at 314-17).

In evaluating Appellant's claim for relief, the trial court reasoned:

- 12 -

[The court] added the following language to the standard jury instruction for Person not to Possess a Firearm:

I hereby charge you that, in Pennsylvania, a person against whom a warrant has been issued is a fugitive from justice.

This language was added at the request of the Commonwealth and in accordance with the *Smith* case cited above.

(Trial Court Opinion, 12/9/24, at 4).  The trial court explained:

In the instant case, and as correctly noted by [Appellant], Officer Christopher Thompson testified that on the date in question, January 28, 2022, [Appellant] had an active bench warrant for his arrest.  [Appellant] further "acknowledges that the Pennsylvania Supreme Court [held in *Smith*] that the defendant's active bench warrant 'rendered him a fugitive from justice prohibited from possessing a firearm[.]'"

[Appellant] claims, however, that there was no evidence that he had notice of that warrant.

(*Id.* at 2-3) (some citations omitted).  The court reasoned pursuant to the holding in *Smith*, the fact that a warrant had been issued for Appellant's arrest demonstrated Appellant's evasion of law enforcement.  *See id.*

We agree with the court's reasoning.  The jury heard testimony from Officer Christopher Thompson and viewed a copy of a warrant which showed that that on April 25, 2019, a warrant was issued for a parole violation for Appellant.  (*See* N.T. Trial, 4/23/24, at 253-54, Commonwealth's Ex. 49). The 2019 warrant listed a previous address for Appellant in York, Pennsylvania.  Appellant, who had previously been reporting to his parole officer, was aware of the terms, conditions, and length of his parole, and would

have been aware of his violations leading to the issuance of the warrant. The Petition for Parole Violation reveals that with time left before his expiration date, Appellant ceased contact with the Adult Probation and Parole Department. (*See* Petition for Violation at 1, 3). Appellant violated several conditions of probation, including failure to report and moving without permission; he could not be located at his listed and approved address and failed to seek permission to move from this address.

Therefore, "Appellant's failure to comply with reporting requirements was an evasion of law enforcement." *See Smith, supra*. Further, Appellant cannot benefit from evading law enforcement by claiming he had no knowledge of the warrant due to his failure to receive it at an address from which he was not legally permitted to move. *See Jenkins, supra* (stating appellant cannot benefit from evading law enforcement by claiming he did not receive notice to address from which he was not legally permitted to move). Appellant's bench warrant was active for several years, and the jury was free to make the reasonable inference based on the testimony that Appellant's warrant had been mailed to his residence and he had been put on notice. *See id.* at 1084. Thus, we conclude that the court adequately conveyed the legal concept at issue, and Appellant is not entitled to relief on this claim. *See Johnson, supra*; *Gomez, supra*.

In Appellant's final issue, he argues that the trial court erred in refusing to dismiss his Section 6105 charge based upon his status as a "fugitive from justice" and that the statute is unconstitutional as applied to him under both

the United States and Pennsylvania Constitutions. Appellant contends that the Second Amendment's protections apply to him and that there is no tradition of disarming fugitives, or even of those convicted of non-violent felonies. Therefore, Appellant asserts that the Commonwealth failed to carry its burden under **Bruen** of identifying a legitimate historical analogue for disarming Appellant for being a fugitive from justice. We disagree.

In **Bruen**, our United States Supreme Court articulated a two-part test that controls our review of Appellant's issue:

> [T]he standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

**Bruen, supra** at 24, 142 S.Ct. at 2129-30. Regarding the first prong of the test, the **Bruen** Court found that the petitioners in that case were ordinary, law-abiding citizens, whose proposed course of conduct (concealing handguns in public), was presumptively protected by the Second Amendment. **Id.** at 32-33, 142 S.Ct. at 2134-35. Regarding the second prong of the analysis, the Court went on to state that courts must "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." **Id.** at 26, 142 S.Ct. at 2131. Nevertheless, the Court noted that "analogical reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin. So

- 15 -

even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* at 30, 142 S.Ct. at 2133.

On June 21, 2024, the United States Supreme Court decided *United States v. Rahimi*, 602 U.S. 680, 144 S.Ct. 1889, 219 L.Ed.2d 351 (2024), which considered a Second Amendment challenge to a federal statute forbidding possession of a firearm to a person subject to a domestic violence order. *See id.* at 684, 144 S.Ct. at 1894. The statute in question included the requirement that the court make a finding that the person represents a credible threat to the physical safety of the person's intimate partner.[5] *See Rahimi, supra* at 690, 144 S.Ct. at 1896-97. Applying the *Bruen* framework, the *Rahimi* Court held that since its founding, this Nation's firearm laws have included regulations to stop individuals who threaten physical harm to others from misusing firearms and, as applied to the facts of the case, the challenged regulation fit within that tradition. *See id.* at 694-702, 144 S.Ct. at 1898-1902. Accordingly, the Court held that the statute was neither unconstitutional on its face, nor as applied to Rahimi himself. *See id.*

This Court has recently summarized our decisions following *Rahimi* as follows:

> Since *Rahimi*, this Court has addressed constitutional challenges to § 6105 arising in a variety of contexts. In [*Jenkins, supra*], Jenkins attacked the constitutionality of

---

[5] *See* 18 U.S.C.A. § 922(g)(8).

- 16 -

that statute when his underlying prohibition stemmed from his being a fugitive from justice. He argued that "the Commonwealth failed to meet its burden to demonstrate that the statute is consistent with this nation's historical tradition of firearm regulation." *Id.* at 1088 (citation omitted). In affirming, we recounted the applicable law from *Bruen* and *Rahimi*. This Court did not make an express determination as to whether Jenkins fell within "the people" identified in the Second Amendment, instead going to the second part of the *Bruen* test, stating that Jenkins was similarly situated to the defendant in *Rahimi*. *Id.* at 1088 ("Pursuant to *Rahimi*, we must determine if the disarmament of fugitives under [§] 6105 is consistent with principles that underpin our tradition of firearm regulations").

The *Jenkins* panel then examined historic surety laws and laws disarming vagrants to find that § 6105's prohibition is analogous to those:

> When the Supreme Court issued its June 2024 opinion in *Rahimi*, it emphasized that the key consideration is whether the challenged regulation is consistent with the principles that underpin our regulatory tradition. The lengthy historical analysis above reveals that disarming people similarly situated to [Jenkins] is not only part of this nation's history of firearm regulation, but also of Pennsylvania's history.

*Id.* at 1096 (citation omitted).

In [*Commonwealth v. Farmer*, 329 A.3d 449 (Pa.Super. 2024), *appeal granted*, 44 MAL 2025, 2025 WL 1873446 (Pa. July 8, 2025)], a case decided several weeks after *Jenkins*, the appellant presented an attack to § 6105 when his prior conviction prohibiting him from possessing a firearm was for felony robbery. … The panel first concluded that Farmer fell within "the people" identified in the Second Amendment, and thus the first part of the *Bruen* test was satisfied. *Farmer*, 329 A.3d at 455. However, we found that Farmer's challenge did not survive examination of the second component, concerning whether the regulation is consistent with the Nation's historical tradition of firearm regulation:

- 17 -

The Supreme Court's ***Rahimi*** opinion, particularly its "how" and "why" analysis with regard to "going armed" laws, provides an avenue for upholding felon firearms bans such as that of § 6105, at least temporarily. The common law "going armed" laws prohibited the use of dangerous weapons to terrify people and imposed forfeiture of weaponry as a punishment. Plainly, the experience of being robbed at gunpoint and/or the threat of being robbed at gunpoint by one convicted of having done so in the past is sufficient to cause terror. And § 6105 is strikingly similar to [18 U.S.C.] § 922(g)(8), at issue in ***Rahimi***, in both how—prohibition of firearm possession—and why—Appellant, based on his criminal history, poses a threat of violence—it restricts Appellant's Second Amendment right. And this case, as distinct from both ***Rahimi*** and ***Range v. Attorney General***, 69 F.4th 96 (3d Cir. 2023) ("***Range I***"), involves a criminal conviction for a felony that involved the use of a firearm. Given the United States Supreme Court's treatment of the "going armed" laws in its ***Rahimi*** opinion, we can safely conclude that our nation does indeed have a history and tradition of disarming people like Appellant.

***Id.*** at 458 (cleaned up). Accordingly, we rejected Farmer's as-applied challenge to § 6105.

Finally, we recently revisited the matter of whether a felon is entitled to protection pursuant to the Second Amendment in ***Commonwealth v. McIntyre***, 333 A.3d 417 (Pa.Super. 2025). In that case, this Court rejected McIntyre's facial challenge to § 6105 after finding that his as-applied challenge was waived for failure to raise it in the trial court. ***Id.*** at 430-31. McIntyre had previously been convicted of burglary, robbery, and aggravated assault. In contravention to ***Farmer***, the panel held that McIntyre did **not** satisfy the first part of the ***Bruen*** test by establishing that he is one of "the people" covered by the Second Amendment, explaining as follows:

Based on all the above, we agree that ***Bruen*** does not stand for the principle that convicted violent offenders

- 18 -

such as McIntyre are "the people" who have a right to possess arms under the Second Amendment. **Bruen** in no way said that felons are protected under the Second Amendment, nor can its decision, with its hyper focus on "law-abiding" citizens, be read as providing the necessary support for such a determination.

Instead, **Bruen** reinforced [**District of Columbia v. Heller**, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008)], which unequivocally stated that its holding that individuals had a right to bear arms under the Second Amendment did not in any way call into doubt the government's ability to prohibit felons from possessing firearms. Therefore, under **Heller**, we find that the plain text of the Second Amendment does not cover McIntyre and his possession of a firearm as a convicted offender. This conclusion negates any need to examine **Bruen**'s second question, *i.e.* whether [§] 6105's prohibition against convicted felons and certain other convicted offenders from possessing firearms is consistent with this Nation's history of firearm regulation.

*Id.* at 430 (cleaned up).

**Commonwealth v. Randolph**, 2025 PA Super 167, 2025 WL 2166516 at *5-6 (Pa.Super. filed July 31, 2025) (internal footnote omitted).

In **Randolph**, the appellant had a prior conviction PWID and was later convicted of persons not to possess firearms. The appellant challenged the constitutionality of Section 6105 in his post-sentence motion and on appeal. This Court examined the relevant precedent to determine whether the statute was unconstitutional on its face or as applied to the appellant.

Regarding the appellant's "as applied" challenge, this Court applied the first prong of the **Bruen** analysis, and considered whether the appellant was one of "the people" protected by the plain text of the Second Amendment.

- 19 -

This Court acknowledged the apparent conflict between **Farmer** and **McIntyre** on this point and ultimately concluded that the appellant satisfied the first component of the **Bruen** test. **See Randolph, supra** at *7.[6]

Therefore, this Court proceeded to the second step of the **Bruen** analysis. Based upon the relevant jurisprudence, this Court determined that the prohibition imposed on the appellant by Section 6105 was consistent with the Nation's historical tradition of firearm regulation, where the trial court specifically found that the appellant's prior convictions for PWID placed him in the category of persons who would pose a credible threat to others. **See Randolph, supra** at *9 (explaining that drug trafficking is inherently violent offense). This Court explained that "America's history of prohibiting certain classes of people from having firearms, particularly those that could pose a higher risk of danger to society, provides a 'historical analogue' required by **Bruen** for § 6105, even if it is not a 'historical twin.'" **Id.** Notably, this Court expressly rejected the appellant's arguments that PWID is not a "crime of violence," nothing that "crime of violence" is not the phrase utilized by the U.S. Supreme Court throughout its recent case law. **Id.** at *10. Rather, "the **Rahimi** Court highlighted that firearm prohibitions may apply to those that pose [a] 'credible threat' to the safety of another. Drug traffickers fit that mold." **Id.**

---

[6] This Court explained that "while we are generally bound by both cases, we must follow **Farmer**'s conclusion as to the first step of **Bruen**, as it was decided earlier in time and because the **McIntyre** panel was unable to overrule that portion of the decision." **Randolph, supra**.

Turning to the facial constitutional challenge, the **Randolph** Court observed that "a facial attack is the most difficult challenge to mount successfully, because it requires a defendant to establish that **no set of circumstances exists under which the Act would be valid**." **Randolph, supra** at *10 (emphasis in original). Because this Court had already decided that Section 6105 was constitutional as applied to the appellant, the appellant's facial challenge necessarily failed because he could not demonstrate that "no set of circumstances exists under which the statute would be valid." **See id.**

Instantly, we reiterate that this Court decided an identical issue in Appellant's companion case and determined that Section 6105 was not unconstitutional as applied to Appellant, who was a fugitive from justice, pursuant to both the state[7] and federal constitutions. **See Jenkins, supra** at 1096. As this Court recounted in **Randolph**, the **Jenkins** panel examined historic surety laws, as well as other laws disarming vagrants, and determined that the laws were analogous to Section 6105's prohibitions. **See id.** Although the Pennsylvania Supreme Court granted allowance of appeal in **Jenkins**, no decision has been issued, and the decision remains precedent.

---

[7] **See also Commonwealth v. Mead**, 326 A.3d 1006, 1015 (Pa.Super. 2024), *appeal denied*, ___ Pa. ___, No. 604 MAL 2024 (Pa. filed Jul. 23, 2025) (explaining that Pennsylvania State Constitution does not provide greater Second Amendment protections than United States Constitution). **See also Commonwealth v. Delauder**, No. 721 MDA 2024, unpublished memorandum at 11-12 (Pa.Super. filed Aug. 21. 2025) (applying **Mead** to Section 6105 claim).

*See Marks v. Nationwide Ins. Co.*, 762 A.2d 1098, 1101 (Pa.Super. 2000) (explaining that intermediate appellate decision remains precedential, despite intervening grant of petition for allowance of appeal as to that decision, unless or until Supreme Court overturns it).

Based on this Court's analysis in Appellant's companion case, we conclude that Section 6105 is constitutional as applied to Appellant.[8] *See Jenkins, supra*. Because Section 6105 is constitutional as applied to Appellant, he is unable to establish that "no set of circumstances exists under which the [statute] would be valid." *See Randolph, supra*. Consequently, his facial challenge to the statute necessarily fails, and we affirm. *Id.*

Judgment of sentence affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/15/2025

_____

[8] Although the *Jenkins* Court did not expressly determine whether Appellant was one of the class of people protected by the Second Amendment, following this Court's more recent decision in *Randolph*, we conclude that Appellant has satisfied this prong of the *Bruen* framework. *See Randolph, supra*; *Farmer, supra*. *See also Bruen, supra*.